IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

FILED

April 15, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| BETTY JEAN STREET, | ) C/A NO. 03A01-9710-CV-00488 |
| | ) |
| Plaintiff-Appellant, | ) WASHINGTON CIRCUIT |
| | ) |
| v. | ) HON. THOMAS J. SEELEY, JR., |
| | ) JUDGE |
| ROBERT L. WADDELL, GARY | ) |
| WALTERS, TRUSTEES OF SALEM | ) |
| PRESBYTERIAN CHURCH, | ) |
| TRUSTEES OF SALEM | ) |
| PRESBYTERIAN CEMETERY FUND, | ) |
| RANDY HURST and RUTH | ) |
| TRIVETTE BRAY, | ) AFFIRMED |
| | ) AND |
| Defendants-Appellees. | ) REMANDED |

BOB McD. GREEN, Johnson City, for Plaintiff-Appellant.

M. STANLEY GIVENS and JACK R. CARRIER, Johnson City, for Defendants-Appellees.

**O P I N I O N**

Franks, J.

In this will contest case, the Trial Judge upheld a will without a jury, and the contestant has appealed.

Edith Trivette, executed three separate wills over a period of approximately three years. The last will was executed on August 31, 1994, and devised $1,000.00 to the Salem Presbyterian Church in Washington County and a diamond engagement ring to her stepdaughter, Ruth Trivette Bray. It then divided the remainder of the estate equally between Robert L. Waddell, Betty Jean Street, and the Salem Presbyterian Church Cemetery Fund. Robert L. Waddell, as Executor, caused

the will to be probated, and ultimately distributed the estate in accordance with the will. Some five months after distribution of the estate, Betty Jean Street, who had received $46,762.27 from the estate, filed a petition to contest the will, and upon an extended trial, the Trial Court ruled against the contestant.

At trial, the contestant offered the deposition of Dr. Ralph Lee Mills in evidence to the effect that Trivette suffered from senile dementia. The doctor testified that he had treated Trivette from 1988 through 1992, and that "slowly over the course of time when I began treating her, she slowly developed progressively worse dementia." Dr. Mills did not see Trivette in 1993 or 1994, although he expected that her mental and emotional condition would have deteriorated during that time.

The contestant, on appeal, insists that the burden of proof of testamentary capacity shifted from the contestant to the proponent of the will upon proof of a serious permanent mental impairment.

In this regard, the Tennessee Supreme Court has said: "While evidence regarding factors such as physical weakness or disease, old age, blunt perception or *failing mind and memory* is admissible on the issue of testamentary capacity, it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing." *In re Estate of Elam*, 738 S.W.2d 169, 171-2 (Tenn. 1987) (*citing American Trust & Banking Co. v. Williams,* 32 Tenn. App. 590, 225 S.W.2d 79, 83 (1948) (emphasis supplied.)

This Court, in the *American Trust & Banking Co.* case observed:

Evidence of prior mental condition may have much, little or no probative value depending upon the nature and effect of the malady, whether general, habitual, continuous, chronic or progressive or due merely to temporary, superficial, accidental, occasional or intermittent causes or conditions. If the debility falls within the first category, evidence of the testator's condition at a time other that the date of the execution of the will may shift the burden of proof and require the production of affirmative proof of his condition at the very time the will was executed.

2

225 S.W.2d at 84.

In this regard, *Green v. Higdon,* 870 S.W.2d 513 (Tenn. App. 1993), considered the impact of the deposition of a Dr. Kaplan offered by the contestant of a will. The doctor testified "His niece tells me he's been confused for more than a year. On examination he was obviously disoriented. He obviously has an organic mental state. In view of the history, it's likely that he has senile dementia. I don't think he is capable of looking after his own affairs as long as this present mental state detention continues. . . My conclusion is that he must have had this primary dementia Alzheimer's Disease for some years. The exact number of years, I couldn't be certain of. Based on my observations of him since 1982, I conclude that his inability to handle his business affairs date back at least a year." *Id.* at 522.

Upon considering Dr. Kaplan's testimony, this Court said "No testimony is found that, on January 18, 1985, the deceased lacked testamentary capacity. No evidence is found of any speech or action of deceased from which a jury could properly find such lack of capacity." *Id.* The Court then noted, "Less mental capacity is required to make a will than to carry on business transactions generally," and then stated, "it is clear that the testimony of Dr. Kaplan, quoted above, is not sufficient to justify a finding as a matter of law that the deceased was incompetent to make a will at any time.

We conclude that the contestant's evidence did not shift the burden of proof of testamentary capacity, but in any event, the proponent put forth sufficient evidence of testamentary capacity at the time of the execution of the will to rebut any presumption of incapacity that could have arisen.

The contestant further argues that she offered proof of physical impairment of Trivette's vision and hearing, and that the proponents failed to show by a preponderance of the evidence that Trivette was familiar with the precise provisions of the will at the time of execution.

3

Where the maker of the will is aged, sick and infirm or unable to read and write by reason of blindness or illiteracy, the proponent of the will is onerated with the burden of showing the testator comprehended the contents of the will at the time of execution. *Burrows v. Lewis*, 24 Tenn. App. 253, 142 S.W.2d 758, 763 (1940). We agree with the contestant that the proponent had the burden of proving that Trivette knew the contents of the will. We conclude that this burden was met by a preponderance of the evidence. T.R.A.P. Rule 13(d).

Gene Gaby, the attorney who prepared the will, testified that he met with Trivette on June 13, 1994 and she expressly informed him then of what she wanted in her will. He was satisfied that Ms. Trivette knew what property she had and the disposition she wanted to make of it, and he prepared the will accordingly. When Gaby met with Trivette for execution of the will on June 24, 1994, he reviewed the will with her, although he could not remember whether he read it to her, whether someone else read it, or whether Ms. Trivette read it. He was certain that one of the three took place.

Gaby then went back to the nursing home on August 31, 1994, and went over the last will with Ms. Trivette, to the extent that he considered she knew what she was signing. A Ms. Gammon was present when this final will, upheld by the Court, was executed, and she remembers Trivette discussing the will with her attorney. Although Gammon could not remember whether the entire will was read aloud, she testified that at least part of it was read, and Trivette told Gaby she understood what she was doing in the will.

The contestant argues that Trivette could not have known the provisions in this latter will, because contestant contends that this will essentially resurrected the provisions contained in her "first will". There is simply no proof in the record that Trivette was attempting to resurrect the provisions from the first will. The evidence

4

establishes by a preponderance that Trivette was familiar with the specific provisions in both the second and third wills which she executed in June and August of 1994. The issue thus becomes whether the evidence preponderates against the Trial Court's finding the will valid.

The Trial Court held that the will dated August 31, 1994, was the last will and testament of Edith Trivette. The standard of review in a case tried without a jury is *de novo* upon the record of the Trial Court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. T.R.A.P. Rule 13(d).

The contestant offered evidence that Trivette had been diagnosed with senile dementia in 1991, and that such condition worsens with time. She introduced several hospital and nursing home documents indicating that Trivette was confused and disoriented at times. She also offered evidence of Trivette's unusual behavior, and to being confused as to whom people were and forgetful. She offered evidence that Trivette had good days and bad days, but did she not offer any evidence as to Trivette's capacity on the specific day of the execution of the will.

The proponent, on the other hand, offered evidence from five disinterested persons, that Trivette had the requisite capacity to make a valid will. The attorney Gaby testified that Trivette informed him of what she wanted in the will. She knew what property she had and how she wanted it divided. Other witnesses, including staff members at the nursing home, testified to their opinions that Trivette possessed the requisite capacity to make a will.

The proponents presented documentary evidence that Trivette was alert and oriented as to time and place, and a psychologist did find that Trivette would get confused at times, but she would correct herself when that happened. The records reveal that Trivette scored below the range for dementia on a test given by the

5

psychologist. The evidence preponderates that Trivette was competent to make the will upheld by the Trial Judge.

Further, the Trial Court correctly found that there was no evidence of undue influence upon Trivette. The contestant offered no proof of a confidential relationship between Trivette and anyone. Nor was evidence offered of any suspicious circumstances warranting the conclusion the will was not Trivette's free and independent act.

The evidence preponderates in favor of the Trial Court's judgment, which we affirm, and remand the cause with cost of the appeal assessed to the appellant.

_____

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.



_____
Charles D. Susano, Jr., J.

6