# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 17, 2011 Session

## BOYD L. HUGHES ET AL. v. CURTIS E. HUGHES, EXECUTOR OF THE ESTATE OF LUCILLE C. LUTTRELL

### Appeal from the Chancery Court for Hamilton County
No. 07-0426     W. Frank Brown, III, Chancellor

---

### No. E2010-02600-COA-R3-CV-FILED-SEPTEMBER 8, 2011

---

This is a will contest case in which the plaintiffs attempt to invalidate the will of Lucille C. Luttrell due to her supposed lack of testamentary capacity. The executor of Ms.Luttrell's estate filed two motions for summary judgment. The first one was denied; the second one was granted. The court ultimately held that the affidavits of medical doctors who evaluated the testator's mental faculties approximately six months before she signed her will do not create a genuine issue of fact regarding her testamentary capacity at the time she signed the will. The plaintiffs appeal. We vacate the order granting summary judgment and remand for further proceedings

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jimmy W. Bilbo, Cleveland, Tennessee, for the appellants, Boyd L. Hughes and Doris R. Hughes.

Robin L. Miller, Chattanooga, Tennessee, for the appellee, Curtis E. Hughes, Executor of the Estate of Lucille C. Luttrell.

## OPINION

I.

Lucille C. Luttrell died May 15, 2006. Shortly thereafter, her nephew, Curtis E. Hughes, offered for probate a last will and testament ("the Will") Ms. Luttrell had signed on September 27, 2004. The Will named Curtis E. Hughes ("the Executor") as the executor of Luttrell's estate. Boyd L. Hughes and his wife, Doris R. Hughes ("the Plaintiffs"), filed this action against the Executor alleging, among other things, that Ms. Luttrell lacked the testamentary capacity on September 27, 2004, to make a will. In September 2007, the Executor filed a motion for summary judgment asking the court to determine, as a matter of law, that Luttrell possessed the necessary testamentary capacity to execute the Will. The motion was supported by several affidavits, including the affidavit of the attorney who prepared the Will. The Plaintiffs responded with affidavits of their own, including those of Dr. Stephen Montgomery and Dr. Jon Huebschman, and "sworn" medical reports of the treatment each of these doctors rendered. In reply, the Executor filed the affidavit of Dr. Terry A. Melvin. Dr. Melvin was Ms. Luttrell's treating physician from April 2004 until her death in May 2006. Dr. Melvin testified in her affidavit that Ms. Luttrell was competent to make a will in September 2004.

After assessing the evidence before it, the trial court denied the motion, stating:

> . . . [T]here are genuine issues of material fact in regard to Ms. Luttrell's testamentary capacity on the date she signed the contested will. Both parties have submitted conflicting evidence as to whether Ms. Luttrell possessed the requisite testamentary capacity to execute a will on September 27, 2004. Such conflicting evidence requires the court to weigh the relative credibility of the evidence to make a decision regarding Ms. Luttrell's testamentary capacity. However, under the requirements of Rule 56 of the Tennessee Rules of Civil Procedure, the court cannot weigh the credibility of evidence at the summary judgment stage. Rather, the court may only do so at trial. Thus, the court cannot determine that Ms. Luttrell possessed the requisite mental, testamentary capacity to duly execute the contested will at this juncture.

The Executor took Dr. Melvin's deposition and filed it in support of a "supplemental" motion for summary judgment. In her deposition, Dr. Melvin agreed with Dr. Montgomery's diagnosis of dementia as of February 19, 2004, the date on which Dr. Montgomery performed an independent examination ordered by a court in a conservatorship action; however, Dr. Melvin testified that Ms. Luttrell nevertheless possessed testamentary capacity

-2-

in September 2004. Her reasons for disagreeing with Dr. Montgomery include (1) Ms. Luttrell's condition responded to treatment and she was in a better condition in September 2004 than she was in February 2004; (2) Ms. Luttrell became less agitated in the time frame that Dr. Melvin saw her and this improved her mental acuity; (3) Dr. Montgomery only saw the patient one time and was not able to adequately factor into his opinion the ups and downs that are natural to a dementia patient; and (4) Ms. Luttrell discussed her plans with Dr. Melvin and acted in accordance with those plans.

The Plaintiffs took the deposition of Dr. Montgomery a few days following Dr. Melvin's deposition. By the time the second motion for summary judgment was heard, the court had before it the Plaintiffs' medical expert evidence, *i.e.*, the deposition of Dr. Montgomery as well as the affidavits of both Dr. Montgomery and Dr. Huebschman. The trial court summarized the proof mustered by the Plaintiffs as follows:

> Dr. Jon C. Huebschman is board certified in internal medicine. . . . . He opined in paragraph 2 of his Affidavit that:
>
>> I was a personal physician of Lucille C. Luttrell from November 16, 1992 through August 18, 2003. During that period of time, Lucille C. Luttrell suffered from dementia, level II, which caused her to be easily confused and she was unable to handle her personal, financial, property and/or business affairs. It was my opinion that by July 1, 2003 that, because of the fact that Lucille C. Luttrell was incapable of handling any of her personal business affairs, a conservator was needed to handle any and all of her personal, financial, property and/or business matters.
>
> Further, Dr. Huebschman stated in paragraph 3 of his Affidavit:
>
>> It is further my opinion within a reasonable degree of certainty that as of the last date I examined Lucille C. Lut[t]rell on August 18, 2003, Lucille C. Lut[t]rell would not have been capable of understanding that she was executing a will if she was executing a will, and she would not have been capable of understanding the consequences of her actions. Further, as of the

last date I examined Lucille C. Lut[t]rell on August 18, 2003, Lucille C. Lut[t]rell would not have known or understood the nature and effect of her act, the property she possessed, and the manner in which her property would be distributed, if she was signing any purported will.

\* \* \*

Dr. Montgomery is board certified in psychiatry and forensic psychiatry. He graduated from UT medical school in 1994 and has been on the faculty of Vanderbilt University Medical Center since January, 2002. Chancellor Jerri Bryant ordered on November 13, 2003, that Ms. Luttrell "[u]ndergo an independent medical evaluation for the two-fold purpose of evaluating the level of dementia and the efficacy of the medications presently prescribed . . . ."

Dr. Montgomery evaluated Ms. Luttrell on February 19, 2004 in Nashville. His opinion is expressed in paragraph 3 of his Affidavit as to the conservatorship issue. He added paragraphs 4 and 5 for the Will Contest issues. Those three paragraphs from Dr. Montgomery's Affidavit of October 15, 2007 state:

> It was my opinion that because of Lucille C. Luttrell's level of dementia, she was incapable of hand[l]ing her own affairs and a conservator was needed . . . .

> It was further my opinion that as of February 19, 2004 Lucille C. Lut[t]rell lacked the requisite soundness of mind and disposing memory to be capable of making a will or otherwise being capable of expressing testamentary intent with regard to disposition of her property.

> It is further my opinion within a reasonable degree of certainty that on September 27, 2004, Lucille C. Lut[t]rell was not capable of understanding that she was executing a will and

-4-

she was not capable of understanding the consequences of her actions. On September 27, 2004, Lucille C. Luttrell did not know or understand the nature and effect of her act, the property she possessed, and the manner in which her property would be distributed under a p[ur]ported will dated September 27, 2004.

\* \* \*

. . . [The Plaintiffs] took Dr. Montgomery's deposition to prove their contention that Ms. Luttrell lacked testamentary capacity. The deposition was taken on April 26, 2010 in Memphis.

As a result of his interview with Ms. Luttrell on February 19, 2004 and the testing performed on her that day, Dr. Montgomery opined that Ms. Luttrell "[h]ad a severe level of dementia meaning that she had beg[u]n to have problems with her thinking and her memory such that she could no longer function in a variety of ways." Ms. Luttrell scored 10 of 30 on the Mini Mental Status Examination that day. She only got one of 10 questions correct dealing with orientation. Dr. Montgomery did an evaluation, which report was attached as Exhibit 2 to his deposition. Dr. Montgomery did not think that medications such as Seroquel, "[w]as the major problem or the sole source of her problems."

Dr. Montgomery responded to the following questions regarding Ms. Luttrell's testamentary capacity:

> Do you have an opinion as to whether or not Lucille Luttrell had a requisite level of cognitive functioning in or at the time that you examined her to understand property that she owned?
>
> A. My opinion was that her dementia was so severe that she was not able to logically and rationally understand any discussion about her property or deciding who would inherit her property upon her demise.

Q. Okay. And you saw her in February, February 19, 2004. And would her condition have improved subsequent to that?

A. It is not likely at all that it would improve once the dementia has progressed to that severe of a level. It's very, very unlikely that it would be reversible. The medications like the Exelon for dementia that she was being given have typically only shown to help people who are in the early mild stages of dementia where their Mini Mental Status scores would be in the 20s. And perhaps early on, there might be some mild improvement.

But once it has progressed to that severe level, it's almost never going to improve unless it was due to some type of vitamin deficiency or other type of infectious process which could be treated and cured, but there was no evidence that she had a reversible cause of dementia such as those. Everything was consistent with her having an irreversible kind of dementia.

Q. *Okay. That said, Dr. Montgomery, as of September the 27th of 2004, would Lucille Luttrell have had the ability to formulate testamentary intent with reference to her property*?

A. *No. It is my opinion that she would not have*, because in order to do that a person would have to have sufficient memory and word finding ability and cognitive abilities to know what day it was and where they were and what they were discussing, the magnitude of their possessions, who would be their potential heirs and be able to discuss reasons for why they were making the will and then be able to discuss what they had done a few hours later without forgetting the entire

process and coming up with an entirely different will.

And based on my examination with her, the testing that was done, the reports of her history even before seeing me and then her history after seeing me, her dementia, again, was at such a severe level that it's very unlikely that she would possess the kind of rational thinking and memory function that is needed in order to engage in that kind of a process.

Dr. Montgomery never saw Ms. Luttrell after February 19, 2004.
. . . .

Counsel for [the Executor] asked Dr. Montgomery certain questions about Ms. Luttrell's capacity to make a will on September 27, 2004:

> Q.  *Okay.  But I guess you cannot say with certainty whether or not she possessed it [testamentary capacity] on September the 27th, 2004?*
>
> A.  *Yes, I can say with a reasonable degree of medical certainty.*
>
> Q.  Right.  But you did not evaluate her on or about September 27th, 2004?
>
> A.  I did not.
>
> Q.  Okay.  And so . . . you do not know whether or not she talked about what all she possessed with her attorney?
>
> A.  No, I don't know what she talked about on that date.

Q. All right. And you don't know what she might have talked about with her physician, the treating physician?

\* \* \*

A. No.

\* \* \*

Counsel for [the Executor] made the point that Dr. Montgomery only saw Ms. Luttrell one time. Although he never changed his opinions, expressed in his Affidavit, Dr. Montgomery did make some interesting comments . . . . For example, . . . the following occurred:

\* \* \*

Q. Well, but for some reason you did not notice her being paranoid on February the 19th of '04?

A. Right. The reason – I just saw her briefly and didn't have the time – I believe she was in the hospital for 21 days.

(Paragraph numbering, headings, and citations to record in original omitted; emphasis added.)

The trial court framed the issue before it thusly: "Can [the Executor] show that Ms. Luttrell did have the mental capacity to execute the Will on September 27, 2004, notwithstanding the [Plaintiffs'] medical proof about [her] condition in 2003 and early 2004?" The court concluded that summary judgment was appropriate:

Here, the Executor is entitled to summary judgment on the issue of testamentary capacity. The only medical proof about Ms. Luttrell's testamentary capacity around the time of the Will's execution on September 27, 2004, was from Dr. Melvin. Also, we have an attorney, trained in estate planning and document execution, that testified as to Ms. Luttrell's testamentary capacity, on their first meeting on September 1, 2004 when the

-8-

details of the Will were discussed, and September 27, 2004 when the Will was executed. The [Plaintiffs] have offered no contrary proof, either lay or professional. Thus, [the Executor] has proved that the [Plaintiffs] cannot prove an essential element of their claim, i.e., that Ms. Luttrell lacked testamentary capacity. Stated another way, [the Executor] has proved that Ms. Luttrell did have the testamentary capacity to make the Will.

The court must reject the Affidavit and conclusions of Dr. Huebschman because his opinion is based upon "facts" as of August 18, 2003 and not Ms. Luttrell's condition on September 27, 2004. . . . Finally, although more current, Dr. Montgomery's opinion was based upon one examination more than seven months before the execution of the Will.

The only medical proof close in time to the execution of the [W]ill is from Dr. Melvin. She was the treating physician for Ms. Luttrell from April 14, 2004 until her death on May 15, 2006. She had numerous office visits and other chance meetings with Ms. Luttrell. Dr. Melvin said Ms. Luttrell improved over time. Dr. Melvin also testified that some of Ms. Luttrell's former medications could have affected her mentally. Dr. Melvin made changes in the medications Ms. Luttrell was taking when she saw Dr. Montgomery. Also, attorney Lee Ann Adams was of the opinion that Ms. Luttrell had the mental capacity to make her Will based upon two conferences in the same month.

Thus, the court finds that the undisputed, and only, proof about the time of the execution of the Will by Ms. Luttrell on September 27, 2004 was that Ms. Luttrell had the mental capacity to make a will. Dr. Melvin and Ms. Adams both testified to that fact. They both said that Ms. Luttrell did what Dr. Montgomery said a person wanting to make a will should do. Ms. Luttrell kept saying the same thing [over time] about her desire for a new will and its contents.

\* \* \*

Ms. Adams' testimony in her deposition was much broader than her Affidavit. Ms. Adams' testimony cleared all issues

regarding the "independence" of her advice. Also, here, the court in the second round of the summary judgment has focused more on the timing of Ms. Luttrell's capacity when the Will was signed. Also, Dr. Montgomery's Affidavit statements were weakened by his deposition testimony. Finally, Dr. Melvin's deposition testimony was broader and more detailed than her Affidavit. Much more of "the Story" was presented in the second round.

## II.

The sole issue on appeal, as stated by the Plaintiffs, is "[w]hether the trial court erred [by granting] summary judgment to the Executor . . . when at least two affidavits were presented by the [Plaintiffs] proving that the testator lacked capacity at the time she executed the will in question."

## III.

Unlike judgments entered after a trial on the merits, "[s]ummary judgments enjoy no presumption of correctness on appeal." *Ferguson v. Nationwide Property & Casualty Ins.*, 218 S.W.3d 42, 48 (Tenn. Ct. App. 2006). "Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Id*. The guidelines by which we make our determination were articulated in *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76 (Tenn. 2008) as follows:

> . . . . The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord* *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* *Staples v. CBL & Assocs., Inc.*, 15

S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). . . . .

\* \* \*

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. . . . . The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley*, 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Blair*, 130 S.W.3d at 763. In addition, we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party. *Staples*, 15 S.W.3d at 89.

*Id.* at 83-84. Where there is conflicting evidence, the evidence relied upon by the proponent of the motion must be disregarded. *Byrd*, 847 S.W.2d. at 210-11. Courts are prohibited from weighing the evidence at the summary judgment stage. *Id*. at 214.

IV.

The Plaintiffs' argument is simple: they assert that the affidavits of Dr. Montgomery and Dr. Huebschman and the deposition testimony of Dr. Montgomery create a genuine issue of material fact. They specifically offer, as part of their argument, the excerpts from Dr. Montgomery's deposition set forth in the previously-quoted opinion of the trial court. We will repeat only the most salient part:

Q:    *Okay.  That said, Dr. Montgomery, as of September the 27th of 2004, would Lucille Luttrell have had the ability to formulate testamentary intent with reference to her property*?

A:    *No.  It is my opinion that she would not have*, because in order to do that a person would have to have sufficient memory and word finding ability and cognitive abilities to know what day it was and where they were and what they were discussing, the magnitude of their possessions, who would be their potential heirs and be able to discuss reasons for why they were making the will and then be able to discuss what they had done a few hours later without forgetting the entire process and coming up with an entirely different will.

And based upon my examination with her, the testing that was done, the reports of her history even before seeing me and then her history after seeing me, her dementia, again, was at such a severe level that it's very unlikely that she would possess the kind of rational thinking and memory function that is needed in order to engage in that kind of a process.

*        *        *

And so, there's – from a reasonable degree of medical certainty, it's very clear that at the time of my evaluation and at any point there afterwards she would not have been able of thinking clearly enough to make out a will.

(Emphasis added.)

The Executor argues that, because Dr. Melvin was treating Ms. Luttrell at the time she made the will, whereas Dr. Montgomery and Dr. Huebschman base their opinions on an examination at an earlier time, Dr. Melvin's testimony "affirmatively proved that Mrs. Luttrell possessed testamentary capacity;" and Dr. Melvin's testimony, according to the Executor, was not rebutted by contrary testimony on the critical issue of Ms. Luttrell's mental capacity on September 27, 2004.  The Executor relies, in part, on *Keasler v. Estate of Keasler*, 973 S.W.2d 213 (Tenn. Ct. App. 1997).  In *Keasler*, we affirmed the trial court's grant of summary judgment in a will contest.  The following quote from our opinion will show that although *Keasler* discussed a rule of law that is applicable to the present case, the facts of *Keasler* do not compel judgment as a matter of law in the present case.

-12-

. . . . The contestant must produce evidence from which a jury could infer that the testator, at the time of executing the will, neither knew nor understood the force and consequences of his acts. *In re Estate of Oakley*, 936 S.W.2d 259 (Tenn. App.1996).

Inquiry must center on the decedent's mental condition at the time of execution of the will, and a contestant must introduce strong evidence to establish a lack of testamentary capacity at the time of execution of the will. *American Trust & Banking Co. v. Williams*, 32 Tenn. App. 592, 225 S.W.2d 79, 84 (1948). *In Hammond v. Union Planters Nat'l. Bank*, 189 Tenn. 93, 222 S.W.2d 377 (1949), our Supreme Court held,

> The right of the contestant to have the issue of mental incapacity submitted to the jury must rest upon substantial or material evidence at the time the will was made and not upon a "scintilla" or "glimmer" of evidence.

*Id*. at 380.

Courts must adhere to the law of this State which holds that there must be material, substantial and relevant evidence to show a lack of mental capacity at the time of execution and in the absence of such proof, there is no issue for a jury to consider. *Hammond*, 222 S.W.2d at 380.

Appellant presented evidence regarding his mother's mental state in depositions and affidavits of family members and the housekeeper, Mrs. Savannah Fuzz. However, none of Appellant's proof concerned events close in time to the December 22, 1986, date of execution. Evidence of a decedent's mental state before or after execution is relevant only when said evidence is not too remote in time and evidence of physical condition is likewise admissible if it has a reasonable tendency to bear upon the testator's mental capacity. *Harper v. Watkins*, 670 S.W.2d 611, 629 (Tenn. App. 1983). . . . .

\* \* \*

When compared to positive testimony that the decedent was of sound mind at the time of execution of the will, the testimony of lay witnesses who base their opinions of unsound mind on statements and other actions of the decedent [at a distant point in time] is insufficient to support a verdict against the will. *American Trust & Banking Co.*, 225 S.W.2d at 84 (*citing Rogers v. Hickam*, 30 Tenn. App. 504, 208 S.W.2d 34 (1947)).

*Id*. at 217 -218.

The present case is different from *Keasler* in that *none* of the lay testimony in *Keasler* directly addressed the mental capacity of the testator on the date the will was executed. The proof offered by the Plaintiffs in the present case directly addresses whether or not Ms. Luttrell had testamentary capacity on the day she signed the will. Dr. Montgomery was specifically asked whether, "as of September the 27th of 2004, . . . Lucille Luttrell . . . had the ability to formulate testamentary intent with reference to her property." His answer was, "No." The present case involves the testimony of an expert qualified in neuropsychiatry based upon testing and a personal examination conducted pursuant to a court order approximately six months before Ms. Luttrell made the will. Dr. Montgomery explained in considerable detail why and how he could testify that the incapacity still existed on September 27, 2004, even though he did not see Ms. Luttrell on that date. His opinion as to Ms. Luttrell's *diagnosis* of dementia and the symptoms of her dementia was corroborated by Dr. Huebschman, although the latter expert did not express an opinion as to Ms. Luttrell's condition on September 27, 2004. We believe the Plaintiffs met their burden, as recited in *Keasler*, of producing "evidence from which a jury could infer that the testator, at the time of executing the will, neither knew nor understood the force and consequences of [her] act." *Id*. at 217. Properly viewed, this is a case of directly conflicting expert testimony as to Ms. Luttrell's testamentary capacity on September 27, 2004. "The resolution of conflicting expert testimony is a factual issue that must be reserved for the trier of fact." *Martin*, 271 S.W.3d at 85.

The Executor also relies on *Street v. Waddell*, 3 S.W.3d 504 (Tenn. Ct. App. 1999), wherein we upheld a trial court's determination that the challenger of the will did not show lack of testamentary capacity. *Waddell* came before us after "an extended trial" and therefore did not involve summary judgment. *Id*. at 505. It did involve, however, a question of the impact of "[e]vidence of prior mental condition" on capacity at the time of execution of a will. *Id*. at 506. We explained,

Evidence of prior mental condition may have much, little or no probative value depending upon the nature and effect of the

-14-

malady, whether general, habitual, continuous, chronic or progressive or due merely to temporary, superficial, accidental, occasional or intermittent causes or conditions. If the debility falls within the first category, evidence of the testator's condition at a time other tha[n] the date of the execution of the will may shift the burden of proof and require the production of affirmative proof of his condition at the very time the will was executed.

*Id*. (*quoting **American Trust & Banking Co. v. Williams***, 225 S.W.2d 79, 84 (Tenn. Ct. App. 1948)). The only evidence of the testator's mental condition in ***Waddell*** came from a doctor who had not seen the testator in over two years and who only testified of observing general senile dementia such that he "expected [the testator's] mental and emotional condition would have deteriorated . . . ." *Id*. at 505.

Dr. Montgomery's testimony in the present case is based on an examination, interview and some level of neuropsychological testing, the purpose of which was to determine Ms. Luttrell's mental status at the time of the examination. He found "severe" dementia. He testified that it was not the type of dementia that would improve. He further testified that the dementia was so severely affecting Ms. Luttrell's memory and thought processes that she could not understand the property she had or formulate a plan for its disposition. Dr. Montgomery also testified that even if Ms. Luttrell were to experience a brief period of clear thought, she could not follow through to communicate her thoughts or remember them long enough to have them memorialized in a will. This testimony is significantly different from that offered in ***Waddell***.

Although we have discussed all the cases and arguments offered by the parties, we think it advisable to discuss briefly the additional cases relied upon by the trial court in concluding that the Plaintiffs' proof did not create an issue of fact. The trial court very briefly mentioned ***In re Estate of McCord***, No. M2003-00175-COA-R3-CV, 2004 WL 508479 (Tenn. Ct. App. M.S., filed March 12, 2004). That case was tried to verdict with the trial judge sitting as the trier of fact. We affirmed in "deference to the trial court's determination of credibility, and in light of the weight of the evidence . . ." *Id*. at *1. Our role in ***McCord*** was to determine whether the evidence preponderated against the trial court's determination. *See id*. at *5; Tenn. R. App. P. 13(d). A doctor who saw the testator four years before she made her will testified that she suffered from dementia that could be expected to worsen and not improve. We specifically held that the doctor's testimony, even though he had last seen the testator four years before she executed the will, was "relevant in light of his opinion that her mental condition would not have improved over time, but rather would have worsened." *Id*. at *6. Nevertheless, upon reviewing the record as a whole and

giving due regard to the trial court's ability to judge the credibility of the witness, we found that "the trial court had ample reason to credit the testimony" in favor of testamentary capacity. *Id*. To relate the holding of *McCord* to the present case, we believe that (1) it shows that Dr. Montgomery's testimony would be relevant and probative of Ms. Luttrell's lack of testamentary capacity on September 27, 2004, and (2) the proper way to process the conflicting evidence is to put it before the trier of fact and let the trier of fact decide the weight to be assigned to the competing testimony.

The trial court also discussed at some length our opinion in the case of *In re Estate of Troutman*, No. E2007-01959-COA-R3-CV, 2008 WL 2521410 (Tenn. Ct. App. E.S., filed June 25, 2008). In *Troutman* we affirmed the trial court's dismissal of a will contest on summary judgment. *Id*. at *1. The challengers of a will offered the testimony of the testator's treating physician, Dr. Johnson, to the effect that the testator suffered from Alzheimer's disease, which 70% of the time rendered her irrational and incompetent and 30% of the time left her completely lucid. Dr. Johnson candidly admitted that he could not provide an opinion to a reasonable degree of medical certainty whether or not the testator was lucid on the day she executed her will. *Id*. at *3. The proponent of the will offered testimony of several witnesses that on the day the testator executed the will she was alert, lucid, oriented and responsive. We held that

> none of the proof presented by the contestants, including Dr. Johnson's testimony, contradicts the conclusion that at the time of execution of her will, Decedent was in an interval of lucidity and possessed the requisite mental capacity, as unequivocally attested to by the three disinterested witnesses present at the time of execution. We therefore affirm the trial court's summary judgment in favor of the Executrix on the issue of testamentary capacity.

*Id*. at *4.

*Troutman* has no application to the present case. In *Troutman*, we were able to fully credit the testimony of Dr. Johnson and still conclude that the testator in that case had the capacity to execute her will. In the present case, the only way we could determine Ms. Luttrell had the capacity to execute her will would be to either weigh the conflicting evidence or ignore the testimony of Dr. Montgomery and Dr. Huebschman We cannot do either on summary judgment. S*ee Martin*, 271 S.W.3d at 85.

We also note that, in a portion of the trial court's memorandum opinion that we have not quoted, the court expressed concern that to credit Dr. Montgomery's opinion that Ms.

Luttrell would never regain testamentary capacity would be to ignore the law that recognizes a person with a mental impairment can have a lucid interval. The trial court was especially concerned with the proof in the record to the effect that Ms. Luttrell was in fact lucid when she executed the Will. The simple answer to that point is the following: when the case is tried, the trier of fact is free to find that Dr. Montgomery is wrong and that Ms. Luttrell was having a lucid interval when she signed the Will and fully understood what she was doing. We are not at trial; we are only concerned at this stage with whether there is an issue of fact. We hold that the Plaintiffs created a genuine issue of material fact concerning Ms. Luttrell's testamentary capacity on September 27, 2004. Accordingly we hold that the trial court erred in granting summary judgment in favor of the Executor.

V.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellee, Curtis E. Hughes, executor of the estate of Lucille C. Luttrell. This case is remanded, pursuant to applicable law, for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE