IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2017 Session

## IN RE LAST WILL AND TESTAMENT OF MARY THERESSE ERDE

**Appeal from the Chancery Court for Fayette County**
**No. PR-1058      William C. Cole, Chancellor**

————————————————————

**No. W2017-00551-COA-R3-CV**

————————————————————

This is a will contest. The trial court denied Appellant's motion to set aside its order admitting Decedent's will to probate and, subsequently, struck Appellant's motion to amend his counter-petition because such amendment would be futile. The trial court additionally found that Decedent possessed testamentary capacity to execute a holographic will, and that although there was a confidential relationship between Decedent and Beneficiary, Beneficiary provided clear and convincing evidence to rebut the presumption of undue influence. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., and JOE G. RILEY, SP. J., joined.

Gordon B. Olswing and Mitchell Lansky, Memphis, Tennessee, for the appellant, Carl Barton.

A. Blake Neill, Somerville, Tennessee, for the appellee, Deborah Lawson.

**OPINION**

FACTS

This case involves the holographic will of Mary Theresse Erde ("Decedent"). The facts are largely undisputed for purposes of this appeal. Throughout her life, Decedent was characterized as a strong-willed, independent woman. After her marriage and the birth of her children, Decedent left her family for approximately fifteen years to live in Ireland and Portugal before returning to the United States in 2011. She resided in Collierville, Tennessee, for two years, near her only surviving son, Intervening

Petitioner/Appellant Carl Barton ("Appellant") and his wife, Connie Barton ("Daughter-in-law"), and then moved to Oakland, Tennessee, in 2013.

In July 2015, Decedent and Appellant's relationship became strained. Specifically, on July 4, 2015, Decedent and Appellant had a disagreement regarding Appellant's mother-in-law living with Appellant and his wife. This was the last time Appellant saw his mother. Prior to this disagreement, Appellant visited his mother regularly, and they had regular phone conversations. On July 16, 2015, Appellant called Decedent; however, Decedent expressed that she did not want to speak with Appellant, and the conversation ended in under a minute. This was the last contact between Decedent and Appellant. Appellant's wife, Connie Barton, and Decedent, however, continued to have a relationship. The two went to eat lunch on August 10, 2015, which was Decedent's birthday. At lunch, Decedent informed Daughter-in-law that she had hired Petitioner/Appellee Debbie Lawson ("Beneficiary") as a housekeeper.

On August 20, 2015, Decedent drove herself to visit a friend in Alabama for four days. Decedent returned from her trip on August 24 and was admitted to the hospital soon thereafter on August 28. While at the hospital, Decedent was diagnosed with Stage IV lung and liver cancer. She returned home on September 8, 2015. Appellant was unaware his mother was in the hospital and, therefore, did not visit her. Daughter-in-law called Decedent on September 10, to inform her that she and Appellant were going on vacation. Decedent did not inform Daughter-in-law that she had been diagnosed with cancer. This was the last contact Daughter-in-law had with Decedent.

In the meantime, in June 2015, Beneficiary began working as a housekeeper for Decedent. Beneficiary also ran errands for Decedent, took care of Decedent's pets, and even sat with Decedent on a regular basis. Decedent would also occasionally give Beneficiary checks or her debit card to buy groceries and other things needed around Decedent's home. Beneficiary stayed at Decedent's home while she was visiting in Alabama. Beneficiary also took Decedent to the hospital on August 28, visited her every day, and eventually brought her home from the hospital on September 8. Beneficiary testified that while Decedent was in the hospital, Decedent informed her that she wished to leave Beneficiary her house and personal property. Decedent also requested that Beneficiary stay with her at her house until she died because she did not want to be alone.

On September 9, Nurse Samantha Walters ("Nurse Walters") became Decedent's home health nurse. At this time, Decedent asked Nurse Walters if she knew any estate planning attorneys, as Decedent wanted to prepare a will to leave Beneficiary her home and personal property. Nurse Walters suggested William Rhea ("Attorney Rhea"), one of Nurse Walters's close friends and an experienced estate attorney. Attorney Rhea interacted with Decedent four times in September 2015 before Decedent's death.

First, on September 10, 2015, Decedent contacted Attorney Rhea to request that he

meet with her at her home to prepare a will because she wanted to leave Beneficiary her entire estate and did not want her son to have anything or be a beneficiary of hers. Attorney Rhea met with Decedent at her home on September 14. In this meeting, Attorney Rhea and Decedent discussed her testamentary wishes, with Decedent telling Attorney Rhea that she wanted "everything" to go to Beneficiary. When Attorney Rhea told her that without a will everything would go to Appellant, Decedent replied with "can I vomit now?" Attorney Rhea advised her to hand-write a will until the formal will was executed. On September 16, Decedent called Attorney Rhea and requested that he help her prepare the will that day. He advised her that he was unavailable to do so until September 18 and again advised her to hand-write a will until the formal will could be executed.

Nurse Walters came to Decedent's home on September 16 to administer care. While there, Decedent asked Nurse Walters for a pen and paper, at which time it was evident to Nurse Walters that Decedent intended on making her will. Decedent was quickly deteriorating at this point and in a considerable amount of pain. In order to facilitate the execution of the holographic will, Nurse Walters propped Decedent up against her body so Decedent could hand write the will. Decedent again stated to Nurse Walters that she wanted Beneficiary to have everything. After the will was written, Beneficiary placed the completed will in Decedent's desk drawer. Attorney Rhea visited Decedent for the last time on September 20. At this meeting Decedent confirmed to Attorney Rhea that the handwritten will was her express wishes and that she did not want her son to receive anything. Decedent passed away the next day, September 21, 2015. Decedent's will expressly left "everything [she] own[ed] to Debbie Lawson." In addition to her probate assets, Decedent also owned a payable on death savings account totaling approximately $100,000; Daughter-in-law had previously been designated the beneficiary of this account and it passed to Daughter-in-law upon Decedent's death.

PROCEDURAL HISTORY

Beneficiary filed a petition to admit handwritten will to probate on October 2, 2015. In this petition, Beneficiary asked the trial court to appoint her as administratrix of Decedent's estate. Appellant subsequently filed an answer to the petition to admit the will to probate along with a counter-petition to contest the handwritten will and for appointment of administrator on October 5, 2015. The counter-petition alleged that (1) the Decedent lacked capacity to execute the handwritten will; (2) the alleged handwritten will was procured by fraud, duress, and coercion; (3) Decedent was unduly influenced to make the alleged handwritten will by Beneficiary and others on her behalf; and (4) Appellant be named as administrator of Decedent's estate. The trial court had an evidentiary hearing on this matter on November 19, 2015. The trial court entered its order on November 25, 2015, finding that (1) three witnesses verified the writing in the will submitted by Beneficiary as Decedent's; (2) the instrument be admitted to probate; and (3) Beneficiary be appointed as administratrix of Decedent's estate.

Over the next year, the parties filed various other pleadings concerning the unresolved issues of testamentary capacity and undue influence. On October 19, 2016, nearly a year from the entry of the trial court's order admitting the holographic will to probate, Appellant filed an amended counter-petition additionally alleging that the will was not in Decedent's handwriting. Beneficiary then filed a motion to strike the amended counter-petition on the grounds that the amendment was futile because the handwriting had been previously verified and submitted to probate on November 25, 2015, that the amended counter-petition was not filed in accordance with Rule 15.01 of the Tennessee Rules of Civil Procedure, and that there was undue delay by Appellant in filing the amended petition.

On October 26, 2016, Appellant filed a motion citing Rule 60.02 of the Tennessee Rules of Civil Procedure to set aside the November 25, 2015 order admitting the will to probate. The motion averred that the testimony of the witnesses as to Decedent's handwriting was fraudulent and, thus, the order should be set aside. Beneficiary responded in opposition to Appellant's motion arguing that (1) Appellant failed to plead with particularity the allegations of fraud; (2) Appellant failed to raise and preserve the handwriting issue; and (3) the alleged fraud was that of a witness, not a party, thus, Rule 60.02 does not apply.

The trial court denied Appellant's Rule 60.02 motion on January 24, 2017 on two grounds. First, the trial court found that the motion did not meet the particularity requirements of Rule 9.02 because it failed to plead specific allegations of fraud. Secondly, the trial court found that even accepting Appellant's attack to the credibility of one witness to Decedent's handwriting, the testimony of the remaining two witnesses went unchallenged. Because Tennessee Code Annotated § 32-1-105 requires only two witnesses to testify as to handwriting, the trial court therefore determined that sufficient evidence was presented that Decedent wrote the holographic will notwithstanding Appellant's proffered evidence. Additionally, the trial court struck Appellant's amended counter-petition because "the [c]ourt [] deni[ed] the Rule 60.02 Motion that would [have made] the Amended Counter-Petition possible."

The trial court held a two-day trial on January 24 and 25, 2017, on the issues of testamentary capacity and undue influence. The court entered its memorandum opinion on February 14, 2017, finding that (1) Decedent possessed testamentary capacity when she executed her will on September 16, 2015; (2) a confidential relationship existed between Beneficiary and Decedent; but (3) the presumption of undue influence was rebutted by clear and convincing evidence of independent counsel and the lack of suspicious circumstances. Appellant timely appealed.

ISSUES

- 4 -

Appellant presents four issues on appeal. The issues, slightly reworded from his brief, are:

(1) Whether the trial court abused its discretion when it struck Appellant's amended counter-petition.
(2) Whether the evidence presented at trial preponderates against the trial court's finding that Decedent's holographic will was valid.
(3) Whether the evidence presented at trial preponderates against the trial court's conclusion that Decedent possessed testamentary capacity to make her holographic will?
(4) Whether the evidence presented at trial preponderates against the trial court's conclusion that Beneficiary presented evidence that rebutted the presumption of undue influence.

DISCUSSION

I.

Appellant first questions the trial court's decision to strike his amended counter-complaint. Citing both Tennessee and federal authority, Appellant asserts that the trial court did not consider all of the relevant factors and therefore abused its discretion in not permitting the amendment. Amendments to complaints are governed by Rule 15.01 of the Tennessee Rules of Civil Procedure, which states, in relevant part:

A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01.[1]

As a general rule, "a party may amend its complaint with leave of the court, and such leave is to be freely given." *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport Inc.*, 45 S.W.3d 588, 610 (Tenn. Ct. App. 2001). The ability to amend a complaint or petition, however, is not unlimited. Rather, in considering whether to grant or deny a motion to amend, trial courts must consider the "undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure

---

[1] There is no dispute that no responsive pleading was filed to Appellant's counter-petition. Regardless, Appellant in his brief does not argue that the trial court was required to permit the amendment because no responsive pleading had been filed. Rather, Appellant asserts that the trial court abused its discretion in failing to permit the amendment given Tennessee's liberal policy regarding amendments.

deficiencies by previous amendments; undue prejudice to the opposing party; and futility of the amendment." ***Id.*** (quoting ***Welch v. Thuan***, 882 S.W.3d 792, 793 (Tenn. Ct. App. 1994)); *see also* ***Kincaid v. SouthTrust Bank***, 221 S.W.3d 32, 42 (Tenn. Ct. App. 2006) (outlining the same factors). Additionally, should the trial court deny a motion to amend, "the trial court must give a reasoned explanation for its action." ***Cumulus Broadcasting, Inc. v. Shim***, 226 S.W.3d 366, 374 (Tenn. 2007) (citing ***Henderson v. Bush Bros. & Co.***, 868 S.W.2d 236, 238 (Tenn. Workers' Comp. Panel 1993)).

The trial court's decision to grant or deny a Rule 15.01 motion is reviewed for an abuse of discretion. *See* ***Freeman Indus. LLC v. Eastman Chem. Co.***, 227 S.W.3d 561, 565 (Tenn. Ct. App. 2006) (applying the abuse of discretion standard to Rule 15.01 motions). A trial court abuses its discretion "only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." ***State v. Banks***, 271 S.W.3d 90, 116 (Tenn. 2008) (citing ***Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008)). Therefore, "a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000); ***State v. Gilliland***, 22 S.W.3d 266, 273 (Tenn. 2000)). However, an abuse of discretion standard "does not permit the appellate court to substitute its judgment for that of the trial court." ***Eldridge***, 42 S.W.3d at 85 (citing ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998)).

Here, Appellant attempted to amend his counter-petition on October 19, 2016. The amended counter-petition contained only a single allegation that was materially different from the first counter-petition: that "the material provisions of the Holographic Will of [Decedent] presented to this Court for probate was not in the handwriting of the testator." Consistent with the initial counter-petition, the amended counter-petition also stated that the handwritten will was procured by fraud. In response to the counter-petition, Beneficiary, as administratrix of the estate, filed a motion to strike, arguing that the counter-petition was untimely, as the issue of whether the holographic will was written by Decedent had been decided by the trial court's November 25, 2015 order admitting the will to probate. As a result, Appellant filed a motion to set aside the November 25, 2015 order, stating only that "the testimony of witnesses and the procurement of said [o]rder was fraudulent and, therefore, should be set aside."[2] The trial court adjudicated the

---

[2] As noted above, the motion to set aside cited Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02, however, only applies to motions seeking to set aside final orders. *See* Tenn. R. Civ. P. 60.02 (allowing a party to seek relief "from a final judgment, order, or proceeding"); *see also* ***Pickard v. Ferrell***, 45 Tenn. App. 460, 471, 325 S.W.2d 288, 292–93 (Tenn. 1959) (noting that motions should be judged by their content, rather than their caption). From our review, the motion appears to fall under the auspices of Rule 52.04, which provides that an order that adjudicates less than all the claims of all the parties "is subject to revision at any time before the entry of the judgment adjudicating all the

motion to set aside first, finding

> (1) the Motion fail[ed] to satisfy the particularity requirements of Rule 9.02 of the Tennessee Rules of Civil Procedure because it alleged fraud but failed to plead any specific allegations of fraud; and (2) the Motion seeks relief from the Order admitting the handwritten will to probate on the grounds that one of the witnesses to the decedent's handwriting is fraudulent; but the proponent of the handwritten will will present three witnesses, so even if this one witness was disqualified, the statutory requirements of two witnesses for the admission of a handwritten will would still be satisfied.

Appellant does not raise the trial court's denial of his motion to set aside the November 25, 2015 order as an issue on appeal. In a separate order, the trial court also struck Appellant's amended counter-petition "because the Court [] den[ied] the Rule 60.02 Motion that would [have] ma[de] the Amended Counter-Petition possible."

On appeal, Appellant asserts that he should have been entitled to amend his complaint notwithstanding the fact that the issue of Decedent's handwriting had already been determined in an earlier hearing. In support, Appellant cites the following statement from the Tennessee Supreme Court in *Harris v. St. Mary's Medical Center, Inc.*, 726 S.W.2d 902 (Tenn. 1987): "Amended pleadings may be filed before trial, after trial, or even after appeal so long as the trial court has jurisdiction and so long as the trial court does not abuse its discretion in allowing the amendment." *Id.* at 904. Appellant further asserts that the trial court abused its discretion because it did not expressly consider all of the factors outlined by Tennessee courts as guiding decisions on this issue.

Respectfully, we cannot agree that the trial court abused its discretion in striking Appellant's amended counter-petition. From our review, the trial court's decision rests on its determination that the amended complaint would be futile.[3] The Tennessee Supreme Court has previously explained that trial courts are not required to grant Rule 15.01 motions when "'the amendment would have been futile.'" *Sallee v. Barrett*, 171 S.W.3d 822, 830 (Tenn. 2005) (quoting *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 923 (Tenn. Ct. App. 1991)). In the first instance, the trial court noted that it had previously denied Appellant's motion to set aside the November 25, 2015 order in which the handwritten will was confirmed to have been in Decedent's handwriting. Having failed to appeal that ruling to this Court, Appellant cannot now complain that the trial court failed

---

claims and the rights and liabilities of all the parties." As noted, *infra*, however, because Appellant does not appeal the denial of this motion, we need not determine the appropriate standard under which this motion should be judged.

[3] We glean the trial court's rationale after considering the trial court's order striking the amendment and the order refusing to set aside the November 25 order, which was specifically referenced by the trial court.

to set aside the order adjudicating the handwriting issue. *See **Watson v. Watson***, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009) ("The appellate court may treat issues that are not raised on appeal as being waived.") (citing Tenn. R. App. P. 13(b)). Because the handwriting of the holographic will had previously been adjudicated and the trial court denied Appellant's request to reopen the proof on this issue, mere allegations in the complaint that the will was not in Decedent's handwriting could be no help to Appellant's cause. In other words, had the amended counter-petition been allowed, the additional allegation that the holographic will was not in Decedent's handwriting would do nothing to undermine the trial court's previous evidentiary finding that the holographic will was written by Decedent.

Even if the trial court's refusal to set aside the November 25, 2015 order was not dispositive of this issue, other factors also support a determination that the amended counter-petition was futile: (1) the lack of evidence to rebut the previous finding; and (2) the lack of particularity with regard to the allegations of fraud. Here, the trial court's order specifically noted that while three witnesses previously testified that the holographic will was written by Decedent, Appellant's proposed additional proof was "that one of the witnesses to the [D]ecedent's handwriting was fraudulent[.]" Because Tennessee law requires only two witnesses to testify as to the handwriting of a holographic will, *see* Tenn. Code Ann. § 32-1-105 ("[T]estator's handwriting must be proved by two (2) witnesses."), the trial court found that even considering the additional evidence, the outcome would not have been different as Decedent's handwriting had been proven sufficient for Tennessee law. Appellant does not address the trial court's finding on this issue in his appellate brief, nor does the record contain a transcript or statement of the evidence from the hearing in which this matter was discussed. As this Court has noted,

> [U]nder Rule 24 of the Tennessee Rules of Appellate Procedure, the appellant has the duty to prepare the record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal. The appellant also has the burden to provide this Court with a transcript of the evidence or a statement of the evidence from which we can determine whether the evidence preponderates for or against the findings of the trial court. ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. ***J.C. Bradford & Co. v. Martin Constr. Co.***, 576 S.W.2d 586, 587 (Tenn. 1979).

***In re M.L.D.***, 182 S.W.3d 890, 894–95 (Tenn. Ct. App. 2005). Given that we have neither a transcript nor a statement of the evidence and Appellant failed to detail the allegations supporting his claim in any of his pleadings, we must presume the trial court correctly found that Appellant's evidence was insufficient to rebut the testimony of the

two remaining witnesses required by Tennessee law. As such, even allowing Appellant to amend his counter-complaint to challenge the handwriting of the will would not result in any benefit to Appellant, as the two necessary witnesses' testimony remains unchallenged.

Appellant's failure to provide detailed factual allegations regarding his fraud claim likewise militates in favor of the trial court's futility finding. Here, the trial court specifically found that any allegations of fraud related to the testimony of the single witness regarding the handwriting were not pleaded with particularity. Under Rule 9.02 of the Tennessee Rules of Civil Procedure, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Here, neither Appellant's amended counter-petition nor his motion to set aside the November 25, 2015 judgment contain specific allegations concerning the facts leading to this fraud claim. Although Tennessee courts have never specifically held that the failure to plead fraud with particularity renders a proposed amended complaint futile, federal courts have previously denied leave to file amended complaints to add allegations of fraud in part because the allegations sought to be added did not plead fraud with particularity, as required by the Federal Rules of Civil Procedure. *See Albert v. Ober Gatlinburg, Inc.*, No. 3:02-CV-277, 2006 WL 897958, at \*3 (E.D. Tenn. Apr. 6, 2006) (citing Fed. R. Civ. P. 9); *see also Timothy A. Garverick & Assocs. v. Heidtman Steel Prod., Inc.*, 807 F. Supp. 430, 435 (E.D. Mich. 1992) (refusing to allow the plaintiff to amend its complaint to plead its fraud allegation with more particularity where summary judgment had already been granted on that issue, resulting in the amendment being futile). Indeed, the United States Court of Appeals for the Sixth Circuit has held that "[a] proposed amendment is futile if the amendment could not withstand a . . . motion to dismiss [for failure to state a claim upon which relief can be granted]." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). As noted by Appellant in his brief, we are permitted to consider as persuasive federal decisions concerning rules of civil procedure that are substantially similar to our own. *See Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 237 (Tenn. 1993) (holding that Rule 15.01 is "essentially the same" as its federal counterpart and that decisions construing the federal rule were persuasive in Tennessee courts). This Court has held that fraud claims that do not "demonstrate that [the] claimant would be entitled to relief under some set of facts" are properly dismissed for failure to state a claim upon which relief can be granted. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992). As such, where a fraud claim cannot survive a motion to dismiss, it appears that a finding of futility is appropriate. Here, the amended complaint asserts no set of facts that would entitle Appellant to relief because it contains no facts of any kind to support the fraud claim. Consequently, the finding of futility on this basis appears appropriate.

Despite these findings, Appellant asserts that the trial court nevertheless abused its discretion in striking the amended counter-complaint because the trial court did not expressly consider the other factors relevant to this inquiry, namely: "undue delay in

filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments; [and] undue prejudice to the opposing party[.]" ***Messer Griesheim Indus., Inc. v. Cryotech of Kingsport Inc.***, 45 S.W.3d at 610. As an initial matter, we note that the United States Court of Appeals for the Ninth Circuit has held that "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." ***Bonin v. Calderon***, 59 F.3d 815, 845 (9th Cir. 1995). Regardless, we conclude that the other factors likewise support the trial court's exercise of discretion in this case.

First, we conclude that Appellant's undue delay in filing his amended counter-petition militates in favor of the trial court's decision. Although a mere delay is not a sufficient basis for a trial court to deny leave to amend a pleading, an unexplained delay, together with other factors, may constitute undue delay sufficient to support denial of leave to amend. ***March v. Levine***, 115 S.W.3d 892, 909 (Tenn. Ct. App. 2003) (citing ***Moore v. City of Paducah***, 790 F.2d 557, 562 (6th Cir. 1986)) (citations omitted); *see also* ***Bowman v. Benouttas***, 519 S.W.3d 586, 603 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Jan. 19, 2017) (affirming the denial of a motion to amend because the undue delay of the plaintiff caused prejudice to the defendant). One factor trial courts may consider in making their decision is when "the party seeking to amend has known all the facts underlying the amendment since the beginning of the litigation." ***March***, 115 S.W.3d at 909. Additionally, "'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.'" ***Id.*** (quoting ***Acri v. Int'l Ass'n of Machinists and Aerospace Workers***, 781 F.2d 1393, 1398 (9th Cir. 1986)).

Here, Appellant sought to amend his counter-petition to include the allegation that the holographic will was not in Decedent's handwriting nearly a year after this issue had been adjudicated by the trial court. It is also uncontested that both parties had the opportunity to present evidence relating to the authenticity of the handwriting of Decedent's will at the hearing on November 19, 2015. Nothing in the record specifically addresses why Appellant was unable to challenge the handwriting at the earlier hearing, as Appellant does not detail the relevant evidence in any of his pleadings. Additionally, allowing Appellant to raise this issue following the evidentiary hearing where Appellant chose not to present evidence nor challenge the handwriting of the holographic will would certainly unduly prejudice Beneficiary, who was under the belief that this issue had been adjudicated by the trial court's November 25, 2015 order. Thus, it appears that Appellant essentially sat on his right to challenge the handwriting of the holographic will until the eleventh hour, without any notice to Beneficiary that this issue was not fully adjudicated by the trial court's prior order. Under the totality of the circumstances, we conclude that the trial court did not abuse its discretion in disallowing the amended counter-petition.

II.

Appellant next challenges the trial court's decision regarding Decedent's testamentary capacity. In a non-jury case, this Court will "review the record *de novo* with a presumption of correctness as to the trial court's determination of facts." *In re Estate of Price*, 273 S.W.3d 113, 119 (Tenn. Ct. App. 2008) (citing Tenn. R. Civ. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). Therefore, an appellate court "must honor this presumption unless [it] find[s] that the evidence preponderates against" the trial court's factual determinations. *Ellison v. Ellison*, No. E2007-01744-COA-R3-CV, 2008 WL 4415768, at *3 (Tenn. Ct. App. Sept. 29, 2008) (citing Tenn. R. Civ. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984)).

In Tennessee, it is required by law that at the time the will is executed, the testator's mind "must be sufficiently sound to enable him or her to know and understand the force and consequence of the act of making the will." *In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn. 1987) (citing *American Trust & Banking Co. v. Williams*, 225 S.W.2d 79, 83 (Tenn. Ct. App. 1948)). The court will not consider a will valid unless the testator (1) makes the decision of her own free will; (2) understands what she is doing; (3) understands to whom she is giving the property and in what proportions; and (4) understands whom she is depriving of the property. *Goodall v. Crawford*, 611 S.W.2d 602, 604–05 (Tenn. Ct. App. 1980). In other words, "a person has the capacity to execute a will if he or she knows and understands what he or she is doing." *In re Price*, 273 S.W.3d at 133 (citing *In re Elam*, 278 S.W.2d at 171–72; *American Trust & Banking Co.*, 225 S.W.2d at 83–84). "The testator's mental condition at the very time of executing the will is the only point of inquiry; but to enable the triers of the facts to ascertain this condition at that time, evidence of the testator's mental and physical condition before and after making the will, within reasonable limits, is received." *Melody v. Hamblin*, 21 Tenn. App. 687, 115 S.W.2d 237, 242 (Tenn. Ct. App. 1937). Thus, evidence of "physical weakness or disease, old age, blunt perception or failing mind and memory" may be admitted on the question of testamentary capacity; however, "it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing." *In re Elam*, 738 S.W.2d at 171–72 (citations omitted)); *see also American Trust & Banking Co.,* 225 S.W.2d at 84 ("[A]part from its effect upon the mind, the physical condition of the testator has no bearing on the issue."); *see also Melody*, 115 S.W.2d at 242 (noting that the evidence of the testator's "appearance, conduct, conversation, declarations, any well–marked change of character or habits without sufficient cause, . . . or any other particular fact or facts" may be considered to determine the testator's capacity at the time of the making of the will). In Tennessee, it is presumed that the testator has the capacity to execute a will; therefore, the party challenging the will has the burden to prove otherwise. *In re Price*, 273 S.W.3d at 133 (citing *In re Estate of Hill*, No. E2006-01947-COA-R3-CV, 2007 WL 4224716, at *3 (Tenn. Ct. App. Nov. 30 2007)). A contestant must, therefore, submit "material, substantial and relevant evidence to show lack of mental capacity at the time of execution." *Keasler v. Keasler*, 973 S.W.2d 213, 218 (Tenn. Ct. App. 1997) (citing

*Hammond v. Union Planters Nat'l Bank*, 222 S.W.2d 377, 380 (Tenn. 1949)).

In his brief, Appellant argues that Decedent did not have the requisite testamentary capacity to execute the holographic will because she did not understand the force and consequences of her estate or actions regarding the estate. Appellant also asserts that the trial court erred in (1) placing substantial weight on the lay witnesses' testimony regarding Decedent's testamentary capacity and (2) failing to place substantial weight on the testimony of Dr. Mays, Appellant's expert, regarding Decedent's testamentary capacity. Respectfully, we disagree with Appellant's arguments and will discuss each in turn.

We begin with Appellant's argument that the trial court erred in placing weight in the lay witnesses' testimony and failing to place significant weight in Dr. Mays' expert testimony. It is well-settled that "trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). Consequently, "appellate courts should afford trial courts considerable deference when reviewing issues that hinge on witness credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of the witnesses.'" *Kelly*, 445 S.W.3d at 692 (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). Further, appellate courts "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Kelly,* 445 S.W.3d at 692 (quoting *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citation omitted)). Lastly, the opinions of lay witnesses regarding a decedent's testamentary capacity are admissible "if they are based on details of conversations, appearances, conduct or other particular facts from which the state of mind may be judged." *In re Elam*, 738 S.W.2d at 172 (citing *American Trust & Banking Co.*, 225 S.W.2d at 83).

In its February 14, 2017 order, the trial court specifically noted "based upon the testimony of [Beneficiary], Nurse Walters, and [Attorney] Rhea[,] that decedent possessed the requisite testamentary capacity to write her will." Here, Beneficiary, Nurse Walters, and Attorney Rhea each spent time, and interacted, with Decedent on either the day she executed her holographic will or the days closely surrounding the execution of the will. Given the nature of each witness's connection with Decedent—either as caregivers or as her attorney—their interactions included personal conversations and close monitoring of Decedent's conduct and appearance, all of which they testified to at trial. Also, Nurse Walters and Attorney Rhea are both disinterested witnesses, as neither received any bounty or gift from Decedent. This Court has previously indicated that the testimony of disinterested witnesses may be especially "[s]ignificant[]" in determining a decedent's testamentary capacity. *Harper v. Watkins*, 670 S.W.2d 611, 630 (Tenn. Ct. App. 1983) (noting the significance of four disinterested persons' testimonies that Decedent had testamentary capacity at the execution of the will); *see also Street v.*

*Waddell*, 3 S.W.3d 504, 507 (Tenn. Ct. App. 1999) (noting that evidence from five disinterested persons, coupled with other documentary evidence, was sufficient to show that decedent had the requisite testamentary capacity). Thus, we cannot conclude that the evidence preponderates against the trial court's decision to place substantial weight on these three witnesses' testimony.

Further, we cannot conclude that the evidence preponderates against the trial court's decision to place little weight on Dr. Mays's expert opinion regarding Decedent's testamentary capacity. As we mentioned above, this Court gives the trial court great discretion on issues regarding witness credibility. It is undisputed that Dr. Mays did not examine or even meet Decedent; rather his opinion centered only on facts given to him by Appellant and Decedent's medical records. However, Decedent's medical records show that Decedent was not suffering from any mental diseases or diagnoses, nor did she exhibit any dementia related symptoms other than periodic confusion. We have previously held, however, that evidence that the decedent was periodically confused was insufficient to show lack of capacity where disinterested witnesses testified that the decedent had capacity to make a will. *See Street*, 3 S.W.3d at 507 (holding that evidence that the decedent "would get confused at times" was outweighed by other evidence showing she had capacity).

We concede that the medical records do provide that Decedent was prescribed prescription pain medication that arguably could affect her judgment. However, evidence of taking pain medication is not always sufficient to prove a decedent's lack of testamentary capacity. *See Harper*, 670 S.W.2d 611(concluding that even though decedent was under the influence of prescription pain medication approximately eighty percent of the time, evidence was presented that decedent was not under the influence of the pharmaceuticals on the day of the execution of the will and thus decedent possessed requisite testamentary capacity.). While there is no dispute that Decedent was prescribed pain medication during the time she made the will, the testimony of Nurse Walters, Beneficiary, and Attorney Rhea indicates that regardless of whether Decedent was taking pain medication at this time, her mental faculties were not diminished as a result. Thus, we discern no error in the trial court's decision in failing to place substantial weight on Dr. Mays's testimony regarding Decedent's testamentary capacity, or lack thereof. We note that the trial court never discredited or discounted the fact that Dr. Mays is an expert witness in his field; instead, the trial court exercised its discretion in determining that Beneficiary's, Nurse Walters's, and Attorney Rhea's personal knowledge of Decedent's state of mind at the time of the execution of the will was entitled to greater weight than the opinion of an expert who never had any interaction with Decedent. To do so was not an abuse of discretion.

Appellant next argues that a necessary element of testamentary capacity was lacking in this case: that Decedent know her bounty. In order to have testamentary capacity, "[t]he testator must have . . . a knowledge of the property possessed and an

understanding of the disposition to be made." ***In re Elam***, 738 S.W. 2d at 170; *see also* ***Goodall***, 611 S.W.2d at 604–05 ("The will is not valid unless the testator . . . is [] capable of . . . understanding to whom he is giving his property and in what proportions and whom he is depriving of it."). In his brief, Appellant asserts that Decedent lacked knowledge of her bounty because she allowed substantial property to pass to Daughter-in-law despite her intention to leave "everything" to Beneficiary.

As an initial matter, we note that Appellant cites no law to suggest that a decedent's failure to understand the exact legal effect of all of her different assets or to use proper legal terms necessitates a finding of lack of capacity. Here, all of Decedent's estate did indeed pass to Beneficiary under the holographic will, per her expressed wishes. Only the non-estate asset passed outside the will. Moreover, we cannot conclude from the testimony presented at trial that it was indeed Decedent's intention to exclude Daughter-in-law. Rather, it appears that Decedent's main intent in making a will was to exclude Appellant. We are, therefore, reluctant to conclude that the impreciseness of Decedent's language, standing alone, invalidates her clearly expressed wish to benefit Beneficiary. To do so would be to benefit Appellant, whom Decedent clearly intended to exclude.

Analogous case law supports our conclusion. For example, this Court has previously held that even where there was evidence that the testator lacked knowledge of his or her bounty, this lack of knowledge will not invalidate a will where other evidence militates in favor of a finding that the testator had sufficient capacity to make a will. For example, in ***Whitley v. Rippey***, No. M2006-01436-COA-R3-CV, 2007 WL 2254584, at *6 (Tenn. Ct. App. Aug. 3, 2007), the testator's will stated that the testator had no children; in reality, the testator had two adopted children. ***Id.*** at *1–2. The trial court denied the will contest, finding no proof of a lack of testamentary capacity. ***Id.*** at *4. The Court of Appeals affirmed. ***Id.*** at *7. Although the Court appeared to concede that the testator's will contained a mistake regarding the testator's bounty, the Court looked to the other "formidable" evidence in the record to show that the testator in fact had capacity at the time the will was executed. ***Id.*** at *6–7. Importantly, the Court noted the affidavits of three witnesses that the testator was competent at the time of the execution of the will, the detail of the will, and the lack of contact between the testator and his adopted children. ***Id.*** Thus, considering the totality of the circumstances, the testator's possible failure to recognize his bounty was not sufficient to negate the other evidence showing that the testator had testamentary capacity. ***Id.***

Similarly, the record contains the testimony of three witnesses that Decedent was competent at the time of execution. Additionally, there is abundant evidence of a lack of contact and communication between Decedent and Appellant in the months leading up to Decedent's death. The trial court further noted that although Decedent was in failing health, in extreme pain, and near death, in accordance with her wishes that Appellant did not receive anything, she recognized that she must execute a will to achieve this goal.

The trial court also noted that there was no evidence that Decedent had any mental deficiencies other than those that were drug or pain related. Therefore, assuming *arguendo* that Decedent did, in fact, make a mistake regarding the legal effect of the payable on death account in her holographic will by allowing Daughter-in-law to be the beneficiary of the account, we believe Beneficiary provided the trial court with sufficient other formidable evidence to support the trial court's finding that Decedent had testamentary capacity. Accordingly, considering the totality of the circumstances surrounding the execution of Decedent's holographic will, this Court finds no error in the trial court's finding that Decedent did indeed possess the testamentary capacity to execute a will.

III.

Finally, Appellant asserts that the trial court erred in finding that the will at issue was not the product of undue influence by Beneficiary. It is well-settled that the contestant in a will contest has the burden of proof. *Kelley v. Johns*, 96 S.W.3d 189, 196 (Tenn. Ct. App. 2002) (citing *In re Elam*, 738 S.W.2d at 171; *Bills v. Lindsay*, 909 S.W.2d 434, 438 (Tenn. Ct. App. 1993)). However, "[w]hen two parties enter into either a confidential or fiduciary relationship and the dominant party receives a gift or other benefit from the other party[,] a presumption arises that some improper advantage was taken." *Richmond v. Christian*, 555 S.W.2d 105, 107 (Tenn. 1977) (citations omitted). The presumption that the gift or benefit is invalid is "rebuttable and the rule in this State is that clear and convincing evidence of fairness will suffice." *Id.* In other words, "the party trying to rebut the presumption of undue influence must establish by clear and convincing evidence 'that the transaction was fair and not procured through undue influence.'" *In re Estate of Farmer*, No. M2013-02506-COA-R3-CV, 2014 WL 5308226, at *9 (Tenn. Ct. App. Oct. 15, 2014) (quoting *Parish v. Kemp*, No. W2007-02207-COA-R3-CV, 2008 WL 5191291, at *5 (Tenn. Ct. App. Dec. 11, 2008)).

As a preliminary matter in any proceeding involving undue influence, the court must first determine whether a confidential relationship existed between the testator and the alleged influencer. *See In re Estate of Brevard*, 213 S.W.3d 298, 302 (Tenn. Ct. App. 2006) ("The doctrine of undue influence is applicable only where there is a confidential relationship with the testator whereby one party is able to dominate and exercise undue influence over the testator.") (footnote omitted). The trial court in this case found that a confidential relationship existed between Decedent and Beneficiary; neither party contests the trial court's finding of a confidential relationship on appeal. Therefore, we proceed in our analysis to discuss whether Beneficiary sufficiently rebutted the presumption of undue influence.[4]

---

[4] Although Beneficiary was the alleged influencer in this case, the beneficiary of the proposed will need not be the individual who influences the testator. *Estate of Brevard*, 213 S.W.3d at 302 n.4 (citing *DeLapp v. Pratt*, 152 S.W.3d 530, 542 (Tenn. Ct. App. 2004)) ("[U]ndue influence may be

A confidential relationship alone, however, is not sufficient to establish a prima facie case of undue influence. Rather, the contestant must also show the existence of at least one suspicious circumstance. *See* **Brevard**, 213 S.W.3d at 303 (stating that while proof of a confidential relationship is necessary to the application of undue influence, such a relationship does not make out a prima facie case of undue influence "unless an additional suspicious circumstance exists"); **Kelley**, 96 S.W.3d 189, 198 (Tenn. Ct. App. 2002) (holding that proof of a suspicious circumstance, alone, was insufficient to make out a prima facie case of undue influence in the absence of evidence of other suspicious circumstances); **Mitchell v. Smith**, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989) ("Proof of a confidential relationship alone will not support a finding of undue influence."). Courts have refrained from enumerating a strict list of suspicious circumstances, instead allowing the trial court to use a common-sense assessment of the facts in each case to determine whether suspicious circumstances are present. **Mitchell**, 779 S.W.2d at 388. In addition to the existence of a confidential relationship, courts frequently rely on (1) "the testator's physical or mental deterioration[,]" and (2) "the beneficiary's active involvement in procuring the will." **Id.** The Court also recognizes other suspicious circumstances, including: "(1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator." **Id.**

Appellant argues that "the [Decedent's] very poor and declining physical condition at the time she made her will constitutes a suspicious circumstance for purposes of determining undue influence and warranting invalidating the [Decedent's] will regardless of any legal advice offered the [Decedent]." In essence, the Appellant is arguing that because there was a confidential relationship between the testator and beneficiary and Decedent's physical condition was declining rapidly, there is more than one suspicious circumstance present and those circumstances outweigh the fact that Decedent obtained independent counsel.

In its final order, the trial court stated that the Decedent was clearly "experiencing physical and mental deterioration." The record does not preponderate against this finding. Here, as at the time she executed the will, Decedent's health was quickly declining, Decedent was in a great amount of pain, and Decedent was too weak to get out of bed. These facts, coupled with Decedent and Beneficiary's confidential relationship, establish a prima facie case for undue influence. *See* **Kelley**, 96 S.W.3d at 196. Thus, this presumption of undue influence must be rebutted by clear and convincing evidence. **Id.** (citing **Matlock v. Simpson**, 902 S.W.2d 384, 386 (Tenn. 1995); **In re Estate of**

exercised by one other than a beneficiary.").

- 16 -

***Hamilton v. Morris***, 67 S.W.3d 786, 793 (Tenn. Ct. App. 2001); ***Hager v. Fitzgerald***, 934 S.W.2d 668, 671 (Tenn. Ct. App.1996)). We therefore proceed to consider whether the presumption was rebutted in this case.

Trial courts may consider a broad scope of evidence regarding the fairness of a transaction or gift. ***In re Estate of Maddox***, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001). Courts may consider the lack of suspicious circumstances, as outlined above, in their fairness determination. ***Parish***, 308 S.W.3d at 891 ("Where, however, an automatic presumption of undue influence exists due to a confidential relationship, this Court has often considered a lack of suspicious circumstances as evidence to rebut an automatic legal presumption of undue influence."). Additionally, one well-known and widely recognized example of proof of fairness in the transaction that courts may also consider is "[p]roof that the donor received independent advice respecting the consequence and advisability of the gift." ***Richmond***, 555 S.W.2d at 107–08. Proof of independent advice is often required where it would be difficult to show fairness without such independent advice, especially where "the gift seems to be unnatural under the circumstances of the case." ***Id.*** (citing ***Miller v. Proctor***, 24 Tenn. App. 439, 145 S.W.2d 807 (Tenn. Ct. App. 1940) (citations omitted)). The trial court found that Beneficiary sufficiently rebutted the presumption of undue influence due to lack of suspicious circumstances and evidence that Decedent had obtained independent legal advice from competent counsel. We agree.

First, it is undisputed and well-supported in the record that Decedent received independent advice from Attorney Rhea. Courts have used the following definition of independent advice in many will contest cases:

> [p]roper independent advice . . . means that the donor had the preliminary benefit of conferring fully and privately upon the subject of [her] intended gift with a person who was not only competent to inform h[er] correctly as to its legal effect but who was furthermore so disassociated from the interests of the donee as to be in a position to advise the donor impartially and confidently as to the consequences to h[erself] of [her] proposed benefactions.

***Parish v. Kemp***, 308 S.W.3d 884, 893 (Tenn. Ct. App. 2008) (citations omitted). Attorney Rhea testified that he has been practicing law for over twenty-three years and has prepared and executed "[e]asily over 500 [wills,]" per his approximation. Additionally, Beneficiary did not recommend Attorney Rhea as an attorney to Decedent and was not present during their meetings when Decedent and Attorney Rhea discussed the making of the will. Further, during the September 14 meeting, Attorney Rhea explained the process of naming an executor, powers of attorney, and the need to execute a holographic will to ensure that Appellant, the only natural heir at law, did not receive anything from Decedent's estate. Therefore, we conclude that Attorney Rhea was (1) competent to inform Decedent on the legal effect of her intended gift; and (2)

disassociated from Beneficiary and able to advise Decedent impartially. *See **Parish***, 308 S.W.3d at 893–94 (concluding that decedent received independent advice because attorney met with decedent privately and discussed the details of the will with decedent). Thus, there is clear and convincing evidence that Decedent received independent legal advice regarding naming Beneficiary as the beneficiary of her will rather than Appellant.

However, Appellant claims that "[t]he existence of independent advice in this case is not sufficient to rebut the presumption of undue influence in view of the existence of suspicious circumstances." Respectfully, we disagree. There is undisputed evidence that there was a confidential relationship between Decedent and Beneficiary and that Decedent's physical and mental health was deteriorating. However, the trial court specifically found that (1) there was little evidence that Beneficiary did anything to procure the will; (2) seventy-four was not an advanced age; (3) Beneficiary did nothing to keep the existence of the will secret; (4) Decedent was not illiterate or blind; (5) there was no proof presented that Decedent was in an emotionally distraught state; (6) there was no evidence that Decedent changed an existing testamentary plan to dispose of her estate; (7) the preponderance of the evidence did not support Appellant's claims that there was a conspiracy among Nurse Walters, Beneficiary, and Attorney Rhea; and (8) no proof was presented that Nurse Walters or Attorney Rhea received any benefit from Decedent's estate or from Beneficiary before or after Decedent died. The trial court did concede that Decedent's decision to leave her estate to Beneficiary might have been unnatural; however, it found that this action was not necessarily suspicious after considering decisions that Decedent had made throughout her life. After a thorough review of the record, we conclude that the evidence does not preponderate against any of the trial court's findings on this issue. Indeed, in our view, the lack of suspicious circumstances in this case coupled with the independent legal advice provided by Attorney Rhea provide the clear and convincing evidence necessary to rebut the presumption of undue influence. As such, the trial court did not err in finding that the will was not a product of undue influence. *See **In re Estate of Branch***, No. W2004-01310-COA-R3-CV, 2005 WL 711962, at \*3–4 (Tenn. Ct. App. Mar. 28, 2005) (concluding that although decedent was of advanced age and experiencing physical health problems, (1) the will was a result of ongoing discussions with decedent and attorney, (2) the will reflected decedent's express intentions, (3) there was no evidence that decedent kept the will secret, (4) decedent was not confused, emotionally distraught, or subjected to fraud or duress, and (5) the totality of the circumstances indicated decedent's will was not unjust or unnatural as there was a lack of suspicious circumstances).

## CONCLUSION

Based on the foregoing reasons, the judgment of the Fayette County Chancery Court is affirmed and remanded for further proceedings as may be necessary and are consistent with this Opinion. The costs of this appeal are taxed to Appellant Carl Barton, and his surety.

_____
J. STEVEN STAFFORD, JUDGE