Fred W. KEASLER, Plaintiff–Appellant,

v.

In re the ESTATE OF Evelyn
D. KEASLER, Deceased,
Defendant–Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Nov. 18, 1997.

Application for Permission to Appeal
Denied by Supreme Court
June 8, 1998.

Mark Warren, Chattanooga, for plaintiff-appellant.

Joe M. Duncan, Memphis, for defendant-appellee.

CRAWFORD, Presiding Judge, Western Section.

This is a will contest case. Petitioner, Fred W. Keasler, appeals from the order of the probate court granting summary judgment and dismissing the action.

Evelyn D. Keasler (hereinafter, "Decedent" or "Mrs. Keasler") died testate on December 29, 1994. She was survived by William M. Keasler, her husband of over 50 years, and by her only child, a son, Fred W. Keasler. Relations between the Keaslers and their son had been strained for several years, following a 1983 disagreement. In fact, it appears that Fred Keasler and his father had had little to do with one another for several years preceding Mrs. Keasler's death.

On December 22, 1986, Mrs. Keasler executed her last will and testament. Following her death, William Keasler presented the will for probate in solemn form in the Shelby County Probate Court on February 6, 1995. The will named William Keasler as her sole heir and beneficiary. Mrs. Keasler had executed another will in August, 1984, which had also named her husband as her heir and beneficiary. On April 3, 1995, Fred Keasler filed in the Probate Court a petition to contest the will. The petition alleged that Mrs. Keasler did not possess either a sound or disposing mind or memory when she executed the will and that she failed to appreciate, understand or comprehend the extent, nature or amount of real property she was disposing under the will. The petition also alleged that

Mrs. Keasler's free agency was controlled by her husband who exercised undue influence over her and that fraudulent misrepresentations had been made to Mrs. Keasler regarding the disposition of the property and even as to the necessity of executing the 1986 will.

On May 14, 1996, Philip J. Cooper, Administrator ad Litem, filed a Motion for Summary Judgment. Fred Keasler filed an answer to the motion for summary judgment on May 28, 1996. The Probate Court heard oral argument on the motion on July 8, 1996. The Estate's original motion for summary judgment did not declare that there was no genuine issue of material fact and that the Estate was entitled to judgment as a matter of law. Therefore, on July 10, 1996, the Estate filed an amended motion for summary judgment, and Fred Keasler filed an amended response on July 18, 1996. By Order entered October 4, 1996, the Probate Court granted the Estate's motion for summary judgment. Appellant timely filed a notice of appeal on October 23, 1996, and the cause is properly before this Court for consideration.

The only issue for review is whether the trial court erred in granting summary judgment. Appellant asserts that the trial court erred because the motion for summary judgment was invalid on its face; the court used an improper standard in deciding to grant summary judgment; and that there are genuine issues of material fact as to whether the testatrix had testamentary capacity and also whether the testatrix executed the will by virtue of undue influence. Appellant also asserts that he had standing to contest his mother's will.

■ Appellant's first assertion is that the motion for summary judgment is invalid on its face because it failed to recite that there was no genuine issue of material fact and that the movant was entitled to judgment as a matter of law. Appellant relies upon this Court's opinion in *Union Planters Corp. v. Peat, Marwick, Mitchell & Co.,* 733 S.W.2d 509, 515 (Tenn.App.1987), in which this Court held that "it is essential to consideration of a motion for summary judgment that the motion recite that there is no genuine issue of fact." While it is undisputed that Appellee failed to include such "magic language" in its

original motion for summary judgment, Appellee corrected the error by filing an amended motion for summary judgment shortly after the conclusion of the hearing.

It has long been the policy of courts of this State to permit amendments to be made to both pleadings and motions when appropriate and warranted by the facts and circumstances of the case. *See Daniels v. Talent,* 212 Tenn. 447, 370 S.W.2d 515, 522 (1963); *Davis v. Arnett,* 27 Tenn.App. 1, 177 S.W.2d 29, 31 (1944). *See, e.g.,* Rule 15.01 Tenn. R.Civ.P. In permitting the amendment, the trial court stated in its Memorandum Opinion:

> This Court finds the absence of the language in question to be a technical flaw which does not in any way prejudice Plaintiffs case. No new proof or any type of unfair surprise was brought forth as a result of the amendment. Therefore, this Court will allow the Amended Motion for Summary Judgment, thereby curing any defect in the original Motion for failure to recite the proper language.

The *Union Planters Corp.* court noted that the absence of the "magic language" was "somewhat of a technicality." 733 S.W.2d at 515. While it appears that the language in question is essential to considering a motion for summary judgment, we do not find that the trial court abused its discretion in permitting the Estate to amend its motion for summary judgment to include the "magic language" required for motions for summary judgment. Any defect was cured by the amendment, and the Court finds that the motion for summary judgment was properly before the trial court for consideration.

Appellant asserts that the trial court erred by using an incorrect legal standard, the standard normally applied to motions for directed verdicts, in considering the motion for summary judgment. Appellant quotes the following language from the trial court's memorandum opinion to support its proposition that the trial court erred in considering the motion for summary judgment in the same manner as a motion for directed verdict:

Therefore, this Court finds that there is no material, substantial, or relevant evidence sufficient to support a judgment against Decedent's Will. In other words, there is no substantial material conflict between Plaintiff's proof and the positive testimony of the witnesses who were present when the will was executed. The law presumes that decedent was of sound mind and disposing memory on the date of execution, and there is no evidence of a disability of a continuous or progressive nature which would exclude the possibility of testamentary capacity at any time.

However, appellant did not quote the final sentence in the paragraph, which states:

Accordingly, this Court finds and so holds that there is no genuine issue as to a material fact, and Defendant is entitled to summary judgment on the issue of Decedent's mental capacity as a matter of law.

▆▆ A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist. *Byrd*, 847 S.W.2d at 210. In *Byrd*, the Tennessee Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (emphasis in original).

▆▆ No presumption of correctness attaches to the trial court's order granting summary judgment, and the task of the appellate court is confined to reviewing the record to determine whether the requirements for summary judgment have been met. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.

1995). The determination of whether a genuine issue of material fact exists is made in the same manner as a motion for directed verdict. *Graves v. Anchor Wire Corp.*, 692 S.W.2d 420 (Tenn.App.1985). In *Byrd v. Hall*, 847 S.W.2d 208, our Supreme Court said:

In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the question should be considered in the same manner as a motion for directed verdict made at the close of plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.

*Id.* at 210–11.

Appellant's assertion that the trial court applied an incorrect legal standard in considering the motion for summary judgment is without merit.

▆▆ Appellant next asserts that the trial court erred in granting summary judgment in favor of the Estate in the face of evidence demonstrating genuine issues of material fact. In cases such as this where there is a properly attested will, there is a presumption in the law that the Decedent was of sound mind and possessed the requisite testamentary capacity to make the will. *Harper v. Watkins*, 670 S.W.2d 611, 629–30 (Tenn.App. 1983). The burden in a will contest is always on the contestant to demonstrate suspicious circumstances or lack of testamentary capacity at the time of execution. *Harper*, 670 S.W.2d at 630. The contestant must produce evidence from which a jury could infer that the testator, at the time of executing the will, neither knew nor understood the force and consequences of his acts. *In re Estate of Oakley*, 936 S.W.2d 259 (Tenn.App.1996).

▆▆ Inquiry must center on the decedent's mental condition at the time of execution of the will, and a contestant must introduce strong evidence to establish a lack of testamentary capacity at the time of execution of the will. *American Trust & Banking Co. v.*

*Williams,* 32 Tenn.App. 592, 225 S.W.2d 79, 84 (1948). In *Hammond v. Union Planters Nat'l. Bank,* 189 Tenn. 93, 222 S.W.2d 377 (1949), our Supreme Court held,

> The right of the contestant to have the issue of mental incapacity submitted to the jury must rest upon substantial or material evidence at the time the will was made and not upon a "scintilla" or "glimmer" of evidence.

*Id.* at 380.

■ Courts must adhere to the law of this State which holds that there must be material, substantial and relevant evidence to show a lack of mental capacity at the time of execution and in the absence of such proof, there is no issue for a jury to consider. *Hammond,* 222 S.W.2d at 380.

■ Appellant presented evidence regarding his mother's mental state in depositions and affidavits of family members and the housekeeper, Mrs. Savannah Fuzz. However, none of Appellant's proof concerned events close in time to the December 22, 1986, date of execution. Evidence of a decedent's mental state before or after execution is relevant only when said evidence is not too remote in time and evidence of physical condition is likewise admissible if it has a reasonable tendency to bear upon the testator's mental capacity. *Harper v. Watkins,* 670 S.W.2d 611, 629 (Tenn.App.1983). Mrs. Fuzz testified as to Mrs. Keasler's declining faculties which became pronounced in 1987. Appellant introduced testimony that Mrs. Keasler did not recognize family members and was unaware of her surroundings once on an afternoon drive. He also asserted as proof of her lack of testamentary capacity the fact that she had worn her clothes inside out and had also worn the same clothes for several days. In addition, Appellant introduced evidence regarding his mother's declining physical capacity that resulted in her inability to take care of herself, to cook, to operate kitchen appliances, and to drive an automobile.

■ The physical condition of the testator is of no consequence on the issue of testamentary capacity unless it has some effect on the mind. *Harper,* 670 S.W.2d at 629. The Supreme Court in *American Trust & Banking Co. v. Williams,* 32 Tenn.App. 592, 225 S.W.2d 79 (1948), stated, "[W]here a testator's sickness is wholly physical, proof of his condition as to lethargy, suffering, or unconsciousness on days preceding or following the execution of the will is entitled to very little consideration." *Id.* at 84.

Dr. George C. Coors, Mrs. Keasler's physician for over 30 years, testified that he had seen her on numerous occasions through the years. In fact, he examined Mrs. Keasler on November 19, 1986, one month prior to execution of the will, and testified that she was of sound mind at that time. He did testify that she had complained of memory loss, and he had ordered a brain scan which proved to be negative. Dr. Coors stated that memory loss was the normal result of aging and that such would not affect Mrs. Keasler's ability to reason or understand. Dr. Coors also saw her in August, 1987, and testified that she was of sound mind then, as well.

Both W. Thomas Hutton and James C. Warner of the Martin, Tate, Morrow & Marston law firm met with Mrs. Keasler on December 22, 1986, when she executed the will. Both testified that Mrs. Keasler was of sound mind and disposing memory on that date. In addition, another attorney, William Taylor Stamps, had met with Mrs. Keasler on December 4, 1986, in regard to a separate, though related, trust matter. He testified that he and Mrs. Keasler had conversed and that in his opinion, she was mentally competent.

■ When compared to positive testimony that the decedent was of sound mind at the time of execution of the will, the testimony of lay witnesses who base their opinions of unsound mind on statements and other actions of the decedent is insufficient to support a verdict against the will. *American Trust & Banking Co.,* 225 S.W.2d at 84 (citing *Rogers v. Hickam,* 30 Tenn.App. 504, 208 S.W.2d 34 (1947)).

This Court's recent decision in the case of *In re Estate of Oakley,* 936 S.W.2d 259 (Tenn.App.1996), is persuasive as to the issues before this Court. In that case, the testifying physician had known the decedent for some 22 years before the decedent exe-

cuted his will in 1989. In fact, the physician testified that he had examined the decedent twice in the four months prior to the decedent's execution of the will, and in his opinion, the decedent was not mentally competent. The trial court directed a verdict in favor of the estate, which decision this Court ultimately affirmed. The Court concluded that the proof presented by the contestants was insufficient to establish a question as to the decedent's mental competency because there was no proof as to the decedent's competency on the day he executed his will. Furthermore, the physician's testimony did not attribute the decedent's confusion to any specific malady and there was no proof that the decedent suffered from a general, continuous, chronic or progressive disease of the mind. *Id.* at 261.

The only point of inquiry on the issue of testamentary capacity is the time of execution. *Harper,* 670 S.W.2d at 628. All that is required of a testatrix is that she know and understand the force and consequences of her actions at such time. *American Trust & Banking Co.,* 225 S.W.2d at 83; *Harper,* 670 S.W.2d. at 628. Upon examination, none of the testimony introduced by Appellant addressed his mother's testamentary capacity on December 22, 1986, the date she executed the will. At most, Appellant established that his mother's condition varied from day to day, that she suffered loss of memory and other diminished capacities attendant with old age. As this Court noted in *American Trust & Banking Co. v. Williams,* 32 Tenn.App. 592, 225 S.W.2d 79 (1948):

> The law fixes the standard of mental capacity and requires that a testator's mind, at the time the will was executed, must be sufficiently sound to enable him to know and understand the force and consequence of his act. He is not rendered incapable of making a will by mere physical weakness or disease, old age, blunt perception, or failing mind or memory, if his mind is sufficiently sound to enable him to know and understand what he is doing.
>
> \* \* \* \* \* \*
>
> [I]n view of the evidence that her condition varied from day to day and the absence of any evidence of prior mental disability of a continuous, persistent and progressive nature which would tend to exclude the hypothesis of testamentary capacity at any time, we think it must be said that there is no substantial material conflict between contestants' proof and the positive testimony of the five witnesses who were present when the will was executed.

225 S.W.2d at 83–85.

The trial court found, and we agree, that there is no substantial, material conflict between Appellant's proof and the positive testimony of witnesses who were present when Mrs. Keasler executed the will. There is a presumption that the decedent was of testamentary capacity at the time of execution. Upon the facts presented, we find no evidence of a disability of a continuous or progressive nature. We conclude that there is no genuine issue of material fact and the Estate is entitled to summary judgment as a matter of law on the issue of Mrs. Keasler's testamentary capacity.

Appellant argues that because of the close relationship between Evelyn Keasler and William Keasler, as husband and wife, William Keasler exercised undue influence upon his wife in order to force her to execute the 1986 will. Undue influence presupposes a mind of testamentary capacity. *Parham v. Walker,* 568 S.W.2d 622, 624 (Tenn.App.1978). Influence upon a capable mind is not prohibited; it is the undue influence thereof which is prohibited. *Id.* For the doctrine to be applicable, there must be in existence a confidential relationship where one party, the beneficiary, is in a position, because of the confidential relationship, to exercise undue influence over the mind and will of the testator. *Id.* In such situations, the burden of proof is upon the one who alleges the existence of such a confidential relationship to prove it. *In re Estate of Rhodes,* 222 Tenn. 394, 436 S.W.2d 429 (1968); *Parham,* 568 S.W.2d at 624. Once the confidential relationship is proved, undue influence by the beneficiary is presumed. Thereafter, the beneficiary may rebut the presumption by proving the fairness of the transaction and the non-existence of the presumed undue influence. Should the benefi-

ciary fail in this regard, the transaction is presumed void. *Parham*, 568 S.W.2d at 624.

■■■ Appellant cites numerous examples of control by Mr. Keasler in an attempt to establish the existence of undue influence. These factors include William Keasler's control over the couple's finances, the withholding of medical treatment when Mrs. Keasler hurt her arm, the hiding of Christmas presents from the Appellant and his family, as well as the alleged forged documents bearing Mrs. Keasler's name which were allegedly forged after execution of the 1986 will. Appellant also asserts that Robert Wilson unduly influenced Mrs. Keasler to make him a contingent beneficiary under the 1986 will and in regard to certain other alleged improprieties concerning the sale of the family farm.

■■■ The Tennessee Supreme Court in *Kelly v. Allen*, 558 S.W.2d 845 (Tenn.1977), analyzed the Tennessee law on this subject and reiterated the distinctions between the confidentiality inherent in natural blood relationships and legal "confidential relationships." The Court held that the normal relationship between close family members was not a *per se* presumption of the invalidity of the transaction. Rather, in analyzing the validity of transactions between close family members, there must be a showing of the elements of dominion and control by the stronger over the weaker or other conditions to establish the destruction of the free agency of the testator and the substitution of the will of the beneficiary. *Id.* at 848. We conclude that the relationship between Mr. & Mrs. Keasler was not such a *per se* "confidential relationship" so as to raise the presumption of undue influence. In order for the presumption of undue influence to arise in this case, not only must the natural confidential relationship be present, but also there must be an additional showing of dominion and control by William Keasler over Evelyn Keasler so as to establish the destruction of Mrs. Keasler's free agency. *Id.* at 848; *Parham*, 568 S.W.2d at 625. Our Supreme Court declared in *Hammond v. Union Planters Nat'l. Bank*, 189 Tenn. 93, 222 S.W.2d 377 (1949),

The mere fact that one has an opportunity to influence the testator as where their relationship is that of husband and wife, which is highly confidential, is not sufficient. We know of no rule whereby the wife is precluded from persuading her husband by fair and reasonable argument to make a will in her favor. The burden is upon the contestant to show that the influence exercised was such as to destroy the free agency of the testator to such an extent that the stronger will of the wife overcame the will of her husband.

222 S.W.2d at 383–84.

In the seminal case on this issue, *Peery v. Peery*, 94 Tenn. 328, 29 S.W. 1, 3, (1895), the Tennessee Supreme Court held that the mere fact that one spouse exercises great influence over the affairs of life as well as home and domestic concerns is insufficient to raise a presumption of invalidity of the will.

Likewise, we conclude that the allegations of undue influence levied against Robert Wilson are not well-taken. Appellant asserts that Wilson influenced Mrs. Keasler to name him as a contingent beneficiary in her will in order to facilitate a real estate transaction. However, Appellant submitted no proof to show that Mr. Wilson unduly influenced Mrs. Keasler to make him a contingent beneficiary under her will. In fact, in his deposition, Fred Keasler stated that he did not know if Robert Wilson influenced, or could have influenced, his mother in making or executing the will.

Taking all of Appellant's allegations as true, the trial court did not find a connection between the facts alleged and the execution of the 1986 will. We agree. There has been no showing that Mrs. Keasler's will was the result of undue influence. Mrs. Keasler left all her assets to her husband of more than 50 years, and her 1986 will followed the desires expressed in her 1984 will. None of the facts indicate that Mrs. Keasler's free agency had been destroyed or that she had otherwise been unduly influenced in making her 1986 will. Accordingly, we find that there is no proof creating a genuine issue of material fact regarding the issue of undue influence and that the trial court correctly granted summary judgment on that question.

The Estate asserts that Fred Keasler does not have standing to contest the validity of his mother's 1986 will. In order to have standing to contest the will, the contestant must show that he would take a share of the decedent's estate if the contested will were set aside. The trial court concluded that even if Evelyn Keasler's 1986 will were to be declared invalid, her 1984 will was valid at the time of execution of the 1986 will and that Fred Keasler did not take a share under the 1984 will, either. In response, Fred Keasler challenged the validity of the 1984 will on the grounds that the 1984 will cannot be admitted to probate because the original will has not been located.

Photocopies of the original, executed will have been found and were presented in evidence along with affidavits from attesting witnesses indicating that the will was properly executed. Tennessee law is clear as to what is required to establish a lost will and those requirements include that there be proof as to the substance and contents of the will. *Sanders v. McClanahan,* 59 Tenn.App. 590, 442 S.W.2d 664, 667 (1969). Despite Fred Keasler's assertions to the contrary, copies of a will may be presented to establish the contents of a lost will. *See, e.g., Morris v. Swaney,* 54 Tenn. (7 Heisk.) 591 (1872). As noted by the Court in *Jennings v.. Bridgeford,* 218 Tenn. 287, 403 S.W.2d 289, 290 (1966), for the limited purpose of evidence of lack of standing, the validity of a will does not have to be established by probate. *See also Cowan v. Walker,* 117 Tenn. 135, 96 S.W. 967, 969 (1906).

Mrs. Keasler's 1984 will is supported by affidavits and appears to have been properly executed. There is no evidence of disability of a continuous or progressive nature so as to preclude testamentary capacity at the time of execution of the 1984 will, and there are no allegations of undue influence by others upon Mrs. Keasler in regard to the execution of the 1984 will. Therefore, if the 1986 will were declared invalid, the 1984 will would be in full force and effect because it would not have been revoked by the 1986 will. *See also Cowan v. Walker,* 117 Tenn. 135, 96 S.W. 967 (1906).

This Court held in *In re Estate of West,* 729 S.W.2d 676, 677–78 (Tenn.App.1987), that in order to have standing to contest a will, the contestant must show that he would take a share of the decedent's estate if the probated will were set aside. Likewise, in *Jennings v. Bridgeford,* 218 Tenn. 287, 403 S.W.2d 289 (1966), our Supreme Court stated,

> [T]he heir and next of kin of a testator, to whom nothing is left by an earlier but unprobated will, has no substantial interest and, therefore, no standing to contest the probate of a later will.
>
> . . . .
>
> We can see nothing on the face of that Will to show that it is not valid, and as the *Cowan* case obviously assumes, for the limited purpose of evidence of lack of standing, the validity of a Will does not have to be established by probate.
>
> . . . .
>
> We, therefore, hold that where a Will, which on its face is valid and is not challenged as being improperly executed, and which leaves nothing to one who is attempting to attack collaterally the probate of the subsequent Will, that person has no interest entitling her to set aside the probate of the later Will.

403 S.W.2d at 290–91.

The 1984 will was a mutual will executed by both Evelyn Keasler and William Keasler which bequeathed all property to the survivor upon the death of the first spouse and bequeathed the entire estate to charity upon the death of the survivor. The 1984 will stated in relevant part:

> We hereby direct and it is our desire that all of the real and personal property of which either of us may be seized and possessed at the time of the decease of either of us, shall pass to and become the absolute property of the survivor and do hereby devise and bequeath unto such survivor all of such property.
>
> We further direct that any and all personal and real property of which the survivor of this Will may be the owner at the time of his or her death, is given, devised and bequeathed to the Shrine Hospital for

Crippled Children, Al Chymia Temple Hospital in Memphis, Tennessee, and to St. Jude Children's Research Hospital, in equal shares.

It appears that Fred Keasler was disinherited under the 1984 will. *In re Estate of Jackson,* 793 S.W.2d 259, 261 (Tenn.App. 1990) (A testator may disinherit his heirs only by giving his property to others, not simply by mere words excluding the heirs). Therefore, Fred Keasler lacked standing to contest the validity of the 1986 will because even if that will were to be set aside, he would not take a share of his mother's estate under the earlier 1984 will.

The order of the trial court granting summary judgment is affirmed. The case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against the appellant.

HIGHERS and FARMER, JJ., concur.