FILED

08/29/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2019 Session

## IN RE ESTATE OF JERRY BRADLEY ESPY

**Appeal from the Probate Court for Rutherford County**
**No. 62233     Tolbert Gilley, Judge**

_____

### No. M2018-01594-COA-R3-CV

_____

The only child of the decedent contests the validity of her father's will on the grounds that the decedent lacked testamentary capacity, and the will was the result of his step-daughter's undue influence. When the step-daughter, who was designated as the executrix and sole beneficiary, filed a petition to admit the will to probate, the daughter filed a will contest. Following discovery, the step-daughter filed a motion for summary judgment to dismiss the will contest. The motion was properly supported by a statement of undisputed facts that principally relied on the affidavit of the attorney who prepared the decedent's will and attended the execution of the will. The attorney's affidavit stated that the decedent was of sound mind when he executed his will and that the step-daughter, who was the sole beneficiary of the will, was not involved in the preparation of the will and was not present when the will was executed. The motion for summary judgment was also supported by the affidavit of a nurse who cared for the decedent at the veterans' home and who also witnessed the execution of the will. The nurse testified that he was responsible for the day to day care of the decedent for three years and interacted with him on a daily basis. He also testified that he witnessed the genuine love and affection the decedent and his step-daughter shared, that the decedent wanted to leave everything to her, and that the decedent "was of sound mind and memory when he signed his Will in my presence." The daughter filed a response to the motion; however, she failed to make specific citations to the record, as Tenn. R. Civ. P. 56.03 requires, of facts that would support her contentions of lack of testamentary capacity or undue influence. She also filed medical records concerning the decedent's medical history; however, the records were not authenticated. The trial court granted the motion for summary judgment based on the finding that there was no genuine dispute of material facts and the step-daughter was entitled to judgment as a matter of law. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Daniel Lyn Graves, II, Murfreesboro, Tennessee, for the appellant, Cynthia Rush.

Tusca R.S. Alexis, Nashville, Tennessee, for the appellee, Freda Espy.

# OPINION

Jerry Bradley Espy ("Decedent") executed a will (the "Will") in the presence of two witnesses and his attorney on October 30, 2013. The Will identified Freda Espy and Marqulita McClain, who were Decedent's step-daughters, as Decedent's only "biological" children and named his step-daughter, Freda Espy ("Ms. Espy"), as Decedent's sole beneficiary. The Will also named his wife, Emma Espy, from whom he had been separated for many years, as the alternate beneficiary in the event Freda Espy predeceased Decedent. Decedent's only biological child, Cynthia Rush ("Ms. Rush"), was not mentioned in the Will.

Decedent died three and a half years later in May 2017. Ms. Espy filed a petition to probate the Will in July 2017.[1] Shortly thereafter, Ms. Rush filed a petition to contest the Will asserting, *inter alia*, that she was the sole biological child of Decedent, and the Will "was facilitated by the undue influence over Testator by Freda Espy, and in the alternative that Testator lacked capacity to properly formulate his correct biological succession and thereby the will is void on its face." On September 28, 2017, Ms. Espy, in her capacities as Respondent to the will contest and Executrix of the estate, filed a response in which she admitted that Ms. Rush was Decedent's only biological daughter but asserted that Decedent raised Ms. Espy and Ms. McClain as his daughters.

On May 11, 2018, Ms. Espy filed a Motion for Summary Judgment and Statement of Undisputed Facts. Ms. Espy asserted there was no evidence to contradict (1) Decedent's stated intention in the Will to leave his entire estate to Ms. Espy and (2) Mr. Johnson's and Ms. Hubbard's affidavits, which stated that Decedent was of sound mind when he signed the Will. The Statement of Undisputed Facts, which was based on the affidavit of Decedent's attorney, Susan Hubbard, stated in pertinent part:

> 2. The Last Will and Testament on page four (4), lists Kenneth Johnson and
> Danyell Carter as the witnesses and Susan H. Hubbard as the Notary.

---

[1] Decedent's wife, Emma Espy, filed an affidavit in support of the petition to admit the will to probate. Her affidavit also acknowledged that she had been "excluded from any specific bequest, legacy inheritance or other benefit under the Last Will and Testament of Jerry Bradley Espy. I waive any right I may have to dissent from the will and assert my rights as surviving spouse to an elective share, exempt property and homestead rights." Marqulita McClain, Decedent's other step-daughter, filed a separate affidavit also supporting the petition and waiving any rights to contest the Will.

3. On page two (2), of the Last Will and Testament of Jerry Espy, it states "I bequeath to my child, Freda Espy, all of my tangible personal property. If she predeceases me, I bequeath all of my tangible personal property to Emma Espy".

4. The Decedent, Jerry Espy did not have Freda Espy present with him when he met with his Attorney regarding his Will and when he signed his Will. See attached Affidavit of Susan H. Hubbard, Attorney at law, paragraph 5.

5. Jerry Espy was of sound mind and disposing memory. See attached Affidavit of Susan H. Hubbard, Attorney at law, paragraph 10 and page one of the Original Will of Jerry Espy.

6. Jerry Espy was aware that Freda Espy was his Step-daughter. See attached Affidavit of Susan H. Hubbard, Attorney at law, page 6.

7. The Decedent, Jerry Espy made it clear that he wanted his entire estate to pass to Freda Espy. See attached Affidavit of Susan H. Hubbard Attorney at law, paragraph 8.

8. Jerry Espy called Freda Espy his daughter. See attached Affidavit of Susan H. Hubbard, Attorney at law.

9. The word biological was not a term used by the Testator but the drafter of the Will. See attached Affidavit of Susan H. Hubbard, attorney at law, paragraph 7.[2]

On June 22, 2018, Ms. Rush filed a response to the Motion for Summary Judgment along with copies of Decedent's medical records. To support her claim that Decedent lacked capacity, Ms. Rush referenced notations in Decedent's records that questioned Decedent's "ability to make decisions with regards to placement and treatment," including observations that Decedent "made decisions with difficulty or did not make decision or decisions were poor" and that some of Decedent's "decisions appear to reflect his immediate desires and deny possible negative consequences to his actions." Moreover, Ms. Rush challenged the qualifications of Ms. Espy and Ms. Hubbard to testify on Decedent's mental condition.

To support her claim that Ms. Espy unduly influenced Decedent, Ms. Rush alleged that Ms. Espy was Decedent's "caretaker" and drove Decedent to Ms. Hubbard's office on several occasions. Ms. Rush also contended the fact that Decedent did not inform Ms.

---

[2] Susan Hubbard stated in her affidavit:

In drafting the Last Will and Testament for Mr. Espy, I used the term biological daughter as a legal term to describe Freda Espy and Marqulita McClain. Those were my choice of words and not Mr. Espy. I did not know Mr. Espy had any children born of his body, as he did not share that with me, even after being asked to list his children.

Hubbard that he had a biological daughter was evidence that he lacked capacity and was under undue influence.

On July 2, 2018, Ms. Espy challenged the admissibility of the medical records without an affidavit to properly authenticate the medical records. Alternatively, Ms. Espy argued that the records, if admissible, failed to rebut the sworn statements that Decedent was of sound mind on the day he executed the Will. Included with Ms. Espy's reply was an affidavit from Kenneth Johnson, who testified that Ms. Espy was not present when Decedent executed the Will at the veterans' home. Mr. Johnson also reiterated that Decedent was of sound mind when he signed the Will.

On August 1, 2018, the trial court granted Ms. Espy's Motion for Summary Judgment. Regarding Ms. Rush's claim that Decedent lacked capacity, the court found that Ms. Espy produced competent evidence that Decedent was of sound mind on the day he signed the Will, and Ms. Rush failed to produce competent evidence to create a material dispute of fact on this issue. While the court recognized that the medical records supported a finding that Decedent's "immediate recall and short term memory [were] at times somewhat faulty," the court found the records failed to contradict Ms. Hubbard's observations about Decedent's mental condition on the day he executed the Will. Regarding Ms. Rush's claim of undue influence, the trial court found that Ms. Hubbard's affidavit established that Ms. Espy was not present during any of Ms. Hubbard's preliminary meetings with Decedent to draft his Will, and Ms. Espy was not present when Decedent executed the Will. Thus, the court found there was no genuine issue of material fact as to either claim.

In this appeal, Ms. Rush contends the trial court erred in summarily dismissing the petition to contest the Will upon a determination that she failed to submit sufficient evidence to create a genuine dispute as to her claims that Decedent lacked testamentary capacity and was subject to undue influence.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

Ms. Rush contends that the medical records showing that Decedent had dementia and could not manage his affairs, coupled with the fact that Decedent failed to name Ms. Rush, his only biological child, in his Will was sufficient to raise a genuine issue for trial as to her claim that Decedent lacked testamentary capacity. Ms. Rush further argues that in addition to the foregoing evidence, her assertion that Ms. Espy "presumably" drove Decedent to his appointment to make his Will and discussed the Will with him was sufficient to raise a genuine issue for trial concerning her claim of undue influence.

For her part, Ms. Espy argues that the material facts are not in dispute and there is no genuine issue for trial.

### I.    TESTAMENTARY CAPACITY

A testator who lacks the capacity to enter into a contract or to manage his or her estate may still have the capacity to make a will. Jack W. Robinson, Sr. & Jeffrey Mobley, *Pritchard on Wills and Administration of Estates*, vol. I, § 102 (7th ed. 2009). As the Tennessee Supreme Court explained:

> The law requires that the testator's mind, at the time the will is executed, must be sufficiently sound to enable him or her to know and understand the force and consequence of the act of making the will. The testator must have an intelligent consciousness of the nature and effect of the act, a knowledge of the property possessed and an understanding of the disposition to be made. While evidence regarding factors such as physical weakness or disease, old age, blunt perception or failing mind and memory is admissible

on the issue of testamentary capacity, it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing.

*In re Estate of Elam*, 738 S.W.2d 169, 171–72 (Tenn. 1987) (internal citations omitted).

When the proponent of a will proves due execution, "there is a presumption in the law that the Decedent was of sound mind and possessed the requisite testamentary capacity to make the will." *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 217 (Tenn. Ct. App. 1997). Therefore, the burden is on the contestant to produce evidence from which a fact-finder could infer that the testator, at the time of executing the will, lacked testamentary capacity. *Id*. At the summary judgment stage, the contestant must present "material, substantial and relevant evidence to show a lack of mental capacity **at the time of execution** and in the absence of such proof, there is no issue for a jury to consider." *Id*. at 218 (emphasis added).

The motion for summary judgment was supported by a Statement of Undisputed Facts that principally relied on the affidavit of Susan Hubbard, the attorney who prepared Decedent's Will. Ms. Hubbard stated that when Decedent met with her on October 28, 2018, a mere two days before executing his Will, Decedent was "of sound mind" and "had a very good memory." Ms. Hubbard stated that Decedent discussed his relationship with his wife and two step daughters, Ms. Espy and Marqulita McClain, and made it clear that he wanted his entire estate to go to Ms. Espy because "she was the one who cared for him and was with him the most."

Ms. Espy also presented the affidavit of Kenneth Johnson, a witness to the execution of Decedent's Will on October 30 and a certified nursing assistant who cared for Decedent for three years at the veterans' home where Decedent lived. Mr. Johnson stated that when Decedent signed his Will, he "was of sound mind and memory," and Decedent "was clear on what he wanted to do." At that time, Decedent told Mr. Johnson that Ms. Espy "was his heart," and for that reason he wanted to devise his entire estate to her.

In her response to the motion for summary judgment, Ms. Rush attached medical records indicating that Decedent had a diagnosis of dementia and difficulty managing his affairs. However, the medical records were not "admissible in evidence" because they were not authenticated. *See* Tenn. R. Civ. P. 56.06.[3] Accordingly, the trial court should

---

[3] Rule 56.06 provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all

(continued…)

not have considered the medical records as evidence. *See Lee v. Lyons Const. Co., Inc.*, 368 S.W.3d 510, 515 (Tenn. Ct. App. 2012) ("The memorandum and graph relied upon by plaintiff to defeat Lyons' motion are unauthenticated hearsay and not admissible in evidence as contemplated by Rule 56.06."); *see also Cox v. Tennessee Farmers Mut. Ins. Co.*, 297 S.W.3d 237, 246 (Tenn. Ct. App. 2009) (citing *Price v. Becker*, 812 S.W.2d 597, 598 (Tenn. Ct. App. 1991) (Plaintiffs' documents attached to their memorandum were inadmissible evidence as the documents were not authenticated by affidavit as required by Rule 56.06)). Nevertheless, doing so was harmless error.

The information in the medical records was both insufficient and too remote in time to create a genuine issue for trial. A diagnosis of dementia, standing alone, is insufficient to overcome competent evidence that a testator was of sound mind at the time the will was executed. *See Street v. Waddell*, 3 S.W.3d 504, 507 (Tenn. Ct. App. 1999). Moreover, the medical records did not speak to whether Decedent had the capacity to make a will; they merely showed that Decedent may not have had the capacity to manage his affairs. Such competency is not the litmus test for testamentary capacity. Robinson, *supra*, at §102.

Aside from the medical records, Ms. Rush also argued that Decedent's failure to mention Ms. Rush, his biological child, to Ms. Hubbard showed that Decedent lacked testamentary capacity. Ms. Rush alleges that she and Decedent had a close relationship; however, she provided no evidence to contradict Mr. Johnson's testimony that in the three years Decedent resided in the veterans' home, Ms. Espy and Ms. McClain were the only children of Decedent's who visited him. Additionally, Ms. Rush presented no facts to show that she and Decedent had a close relationship or that he still considered her to be his daughter. "[T]he fact that one or more children are disinherited without being mentioned in a will does not provide a basis for attacking a will." *In re Estate of Eden*, 99 S.W.3d 82, 93 (Tenn. Ct. App. 1995) (citations omitted). Thus, the fact that Decedent failed to mention Ms. Rush to Ms. Hubbard is not sufficient to raise a genuine issue for trial.

As previously stated, a will contestant must present "***material, substantial and relevant*** evidence to show a lack of mental capacity ***at the time of execution*** and in the absence of such proof, there is no issue for a jury to consider." *Keasler*, 973 S.W.2d at 218 (emphasis added). The evidence showed that at the time Decedent executed his Will, he fully understood the consequence of his act and "the disposition to be made," which is all that is required for testamentary capacity. *See Elam*, 738 S.W.2d at 171. Therefore, we affirm the trial court's determination that there is no genuine issue of material fact for a

---

papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. . . .

jury to consider regarding the issue of testamentary capacity and that Ms. Espy is entitled to summary judgment on this issue as a matter of law.

## II.  UNDUE INFLUENCE

In a will contest, the burden of proof is on the contestant to show undue influence. *Kelley v. Johns*, 96 S.W.3d 189, 196 (Tenn. Code Ann. 2002). Undue influence occurs when the "testator's volition at the time of the testamentary act was controlled by another and . . . the will was not the result of the free exercise of judgment and choice." Robinson, *supra*, at § 130 (quoting *In re Roy's Estate*, 193 P. 682 (Wash. 1920)). To raise the presumption of undue influence, the contestant must establish the existence of a confidential relationship between the testator and the beneficiary, which requires proof that the beneficiary exercised dominion and control over the testator. *In re Estate of Brevard*, 213 S.W.3d 298, 302 (Tenn. Ct. App. 2006). However, proof of a confidential relationship, alone, is not dispositive. Robinson, *supra*, at § 131. "To void a will on the ground of undue influence, it must appear that the influence ***was exerted upon the very act of making the will***." *Id*. (emphasis added).

"Invalidating a will because of undue influence is . . . not a simple undertaking." *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). Often, a contestant cannot rely on direct evidence and must rely on "suspicious circumstances," such as (1) deterioration of the testator's mental and/or physical condition; (2) the beneficiary's active involvement in procuring the will; (3) secrecy surrounding the will's existence; (4) the testator's advanced age; (7) lack of independent advice in the preparation of the will; (8) a testator's illiteracy or blindness; (9) unnatural terms in the will; (10) the testator's emotional fragility; (11) discrepancies in the will's terms and the testator's expressed intentions; and (12) the presence of fraud or duress. *Id*. "Generally, there is no prescribed type or number of suspicious circumstances necessary to invalidate a will." *In re Estate of Brevard*, 213 S.W.3d at 302.

A typical familial relationship is neither a suspicious circumstance nor a confidential relationship in the context of an undue influence analysis. This is because "the term 'confidential relationship' has a very precise legal meaning." *Jarnigan v. Moyers*, 568 S.W.3d 585, 591 (Tenn. Ct. App. 2018).

> We have previously identified two broad categories of confidential relationships: (1) "legal confidential relationships," where the law imposes fiduciary duties on the dominant party; and (2) "family and other relationships." [*Matlock*, 902 S.W.2d] at 385-86. We have repeatedly emphasized that "family and other relationships" are only "confidential" when one party exercises dominion and control over the other party. E.g., *Childress*, 74 S.W.3d at 329 ("The core definition of a confidential relationship requires proof of dominion and control."); *Matlock*, 902

S.W.2d at 386 ("'[F]amily and other relationships', . . . require proof of the elements of dominion and control[.]'"); *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977) (holding that a normal parent-child relationship is not a confidential relationship absent "elements of dominion and control. . . .").

*Id.* at 591–92.

Therefore, a familial relationship, standing alone, does not give rise to an inference or presumption of domination and control. *Kelly*, 558 S.W.2d at 848. "Influence acquired over a testator by kind offices, affection and attention, even if accompanied with persuasion . . . is not such undue influence as will invalidate a will." Robinson, *supra*, at § 133. Mere proof of a confidential relationship will not support a finding of undue influence. *In re Estate of Maddox*, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001). However, absent proof of a confidential relationship, whereby one party is able to dominate and exercise control over the testator, the claim for undue influence necessarily fails. *In re Estate of Brevard*, 213 S.W.3d at 302.

Ms. Rush has not cited to the record to identify any direct evidence that supports a finding that Ms. Espy exerted any undue influence on Decedent at any time. Because she has not presented or identified any direct evidence of undue influence, Ms. Rush must establish "the existence of more than one suspicious circumstance to make out a prima facie case of undue influence." *Kelley*, 96 S.W.3d at 196.

The party opposing a motion for summary judgment must file a response to each fact set forth by the movant, and "[e]ach disputed fact must be supported by specific citation to the record." Tenn. R. Civ. P. 56.03. Ms. Rush failed to do so. More specifically, she failed to cite to any facts in the record that support her assertions of domination or undue influence. For example, Ms. Rush alleged that Ms. Espy was Decedent's "primary caregiver" but the allegation was not supported by reference to any facts in the record. Also, she alleged that Ms. Espy acted as a "gatekeeper" at the veterans' home, limiting Decedent's visitors; however, Ms. Rush again failed to identify any evidence that supported this allegation.

Ms. Rush conceded that Ms. Espy was not present when Decedent discussed the terms of his Will or when he signed his Will. However, Ms. Rush argued that Ms. Espy "was presumably the one who drove [Decedent] to the appointment and discussed the will with him." To support this allegation, Ms. Rush submitted Ms. Espy's responses to Ms. Rush's Supplemental Interrogatories, wherein Ms. Espy stated that she "dropped [Decedent] off maybe about four times to see his lawyer," but "did not have conversations with [Decedent] about his lawyer." These statements do not support Ms. Rush's assertion. Moreover, even if Ms. Espy drove Decedent to his appointment with his attorney and discussed his Will with him, "[i]nfluence acquired over a testator by kind

offices, affection and attention, even if accompanied with persuasion . . . is not such undue influence as will invalidate a will." Robinson, *supra*, at § 133.

Simply put, there is no evidence in the record that would give rise to an inference or presumption of domination and control over Decedent by Ms. Espy. Mr. Johnson testified that he was one of Decedent's primary caregivers for three years and no one restricted access to Decedent at the veterans' home. He also described Decedent as a "popular man," with "lots of family and friends visiting." According to Mr. Johnson, Decedent was also opinionated, and "firm in his convictions." Mr. Johnson also testified that Ms. Espy visited Decedent daily, and Mr. Johnson "was witness to the genuine love and affection they both shared with each other." Ms. Rush neither identified nor cited to any facts in the record that would dispute Mr. Johnson's testimony.

Decedent's attorney, Susan Hubbard, also testified that when she met with Decedent to discuss his Will in the days prior to its execution, they were always alone. Moreover, and significantly, Mr. Johnson and Ms. Hubbard both testified that Ms. Espy was not present when Decedent executed his Will. Again, Ms. Rush neither identified nor cited to any facts in the record that would dispute these facts.

Therefore, we affirm the trial court's determination that there is no genuine issue of material fact for a jury to consider regarding the issue of undue influence and that Ms. Espy is entitled to summary judgment on this issue as a matter of law.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Cynthia Rush.

_____
FRANK G. CLEMENT JR., P.J., M.S.